**CITY OF LUBBOCK, Appellant,**

v.

**Webb CORBIN and Mary Helen Corbin, Appellees.**

**No. 07–94–0080–CV.**

Court of Appeals of Texas, Amarillo.

April 30, 1996.

Rehearing Overruled Oct. 9, 1996.

Cecil Kuhne, William J. Wade, Lubbock, for appellant.

James Bruce Bennett, Austin, for appellees.

Before DODSON, BOYD and QUINN, JJ.

DODSON, Justice.

Plaintiff, the City of Lubbock (Lubbock) instituted an action for an injunction to enforce a Housing Standards Commission order requiring defendants Webb and Mary Helen Corbin to secure a house they were constructing and clean up the lot upon which the house was being built. The Corbins counterclaimed against Lubbock under Title 43, § 1983 of the Federal Civil Rights Act alleging due process and equal protection violations. Upon a jury verdict, the trial court rendered judgment in favor of the Corbins for $303,000.

By sixteen points of error, Lubbock asserts the trial court erred in refusing their motions for summary judgment, instructed verdict, and judgment *non obstante veredicto* with respect to the Corbins' § 1983 claim; there is no evidence or factually insufficient evidence to support the jury's finding of a § 1983 violation or the corresponding award of damages; various separate damages were improperly submitted in one issue; there is no basis for an award of attorney's fees; the award of prejudgment interest was excessive; the trial court erred in refusing their motions for summary judgment, instructed verdict, and judgment *non obstante veredicto* with respect to Lubbock's claim for injunctive relief because the Housing Standards Commission order for which they sought an injunction was final and not appealed by the Corbins; and finally there is no evidence to support the jury's finding that the house was not a nuisance, or the finding is against the great weight and preponderance of the evidence.

Because we conclude the Corbins did not prove a § 1983 cause of action as a matter of law, we reverse and render that the Corbins take nothing on their § 1983 claim. We also conclude the order for which Lubbock sought an injunction was a final appealable order, was not appealed by the Corbins, and is thus binding upon them. However, as Lubbock has provided no support for its assertion that

it is entitled to an injunction, we affirm that portion of the trial court's judgment denying the requests for injunctive relief.

## Background

On April 17, 1986, Webb and Mary Corbin purchased a lot for their future home in Lubbock. Webb believed he could construct their house for $120,000, and the Corbins secured interim financing to build the home from David Harmon, a Lubbock banker. The bank Harmon then worked for later became a part of, and will be hereinafter referred to, as Lubbock National Bank.

The Corbins obtained their first building permit on April 18, 1986, but delayed initiation of construction until June or July of 1987, when they poured the foundation. Over the next two years, the Corbins did some work on the house themselves. They also hired several different framers to perform framing work, several bricklayers to partially brick the house, and also a subcontractor to partially complete the roof. However, the remaining work continued to progress unevenly.

On December 24, 1988, the Corbins received a letter signed by neighbors who resided near the house under construction. They expressed concern about the slow construction progress on the house, problems they had experienced with debris from the construction site, and the negative effect of the unfinished house on their property values. When Webb received the letter, he and Mary were attempting to renew their interim financing with Lubbock National Bank, but they received no response until March of 1989.

In the meantime, Max Garza, the supervisor of Lubbock's Building Code Department, had continued to extend the Corbins' original building permit [1] often without charging the required fee. On February 20, 1989, in connection with an additional extension, Garza imposed a construction schedule on the Corbin house. The construction schedule provided in relevant part:

> After receiving your request for an extension of the building permit for your home located at 4109–86th, I have decided to grant an extension of 30 days. The extension will be until March 21, 1989. At the end of these 30 days an inspection will be made to determine if construction work is proceeding at an acceptable pace. If work is proceeding satisfactorily the permit will be extended another 30 days. At the end of 60 days, April [21], 1989, with the next extension (at no charge) the house should be completed on the outside, i.e. all doors, windows, brick and roofing.

> Should this work be completed as stated above, inspections will be made and an extension granted for the remaining 120 days of your request.

Webb presented Garza's construction schedule letter to Harmon, and nineteen days later Harmon advised Webb that Lubbock National Bank's loan committee would renew the credit line (which had expired) if the Corbins would pay a $1,000 pre-payment for interest points. Webb decided to obtain interim financing elsewhere, and on March 31, 1989, the Corbins transferred to City Bank, obtained a $75,000 line of credit, and used approximately $17,000 of these funds to pay off unsecured notes owed to Lubbock National Bank.

By the time the Corbins secured the loan at City Bank, the first thirty-day deadline on the building schedule had already expired. As a result, on March 31, the Building Code Department gave them an additional extension until April 21, 1989, so that they could complete the initially scheduled construction.

---

1. Section 303(d) of Lubbock's Uniform Building Code provides that "[e]very permit issued by the building official under the provisions of this code shall expire ... if the building or work authorized by such permit is not commenced within 180 days ... or if the building or work authorized by such permit is suspended or abandoned at any time after the work is commenced for a period of 180 days.... Any permittee holding an unexpired permit may apply for an extension.... The building official may extend the time for action by the permittee for a period not exceeding 180 days.... No permit shall be extended more than once. In order to renew action on a permit after expiration, the permittee shall pay a new full permit fee." LUBBOCK, TEX., UNIFORM BUILDING CODE § 303(d)(1982).

On May 25, 1989, Garza, Rob Allison (Lubbock's Code Enforcement Administrator), and two others, met at the Corbin house. Garza, acting under the Building Code Department, placed a stop-work tag on the house because the building permit had expired due to non-compliance with the construction schedule. The tag stated that significant progress had not been made on the house, and the Building Code Department's position was that the Corbins had not complied with the agreed construction scheduling letter.

The Corbins later received a notice from Lubbock's Code Enforcement Department (of which Rob Allison was the supervisor) dated July 14, 1989, stating that the Corbin house was in violation of the Housing Code.[2] A condition allegedly existed on the property which would constitute a common law nuisance because the structure was open and accessible, and the letter gave the Corbins ten days to enclose the structure. They proceeded to close in the house with sheetrock, plywood and particle board. However, because the garage doors had to be specially ordered, they were not installed until August 25, 1989, and the house remained open.

The Corbins next received a notice dated August 23, 1989, from the Code Enforcement Department, stating that an inspection had been made of the house on August 18, 1989. The letter provided that the property had deteriorated to the extent that it had become substandard and was of questionable habitability. A violation report, dated August 18, 1989, and allegedly attached to the notice, showed primarily that the house was structurally incomplete, open and accessible, and constituted a fire hazard.

The notice stated that a hearing would be held before the Housing Standards Commission on September 12, 1989, to ascertain whether the house was substandard and in violation of the Housing Code. City Bank, as lender, also received a copy of the notice, and its attorney transmitted a letter to the Corbins requiring them to bring the house into compliance with the Building Code before the hearing date.

On September 12, 1989, the Housing Standards Commission held a hearing where evidence was presented by Lubbock's employees, the Corbins, and neighbors. As a result of that hearing, the Housing Standards Commission issued an order, signed on September 25, 1989, which provided in relevant part:

... the conditions existing on the property on the date of hearing are in violation of the provisions of City of Lubbock Code of Ordinances as they are substandard.

In view of the foregoing fact situation, it is the finding of the Commission that the structure(s) located at the above stated address is substandard and not habitable in its current condition. Immediate correction of this violation is hereby ORDERED since it would require substantial renovation, reconstruction and repair to be in compliance with standards. The structure is to be secured with plywood or an accepted material on or before the expiration of ten (10) days. Roofing, flat work and the unfinished exterior wood is to be completed. The grounds are to be completely cleaned including the removal of all concrete slabs, trash, debris or any other form of material except landscaping. All holes are to be properly filled. All of such work and clean up shall be completed on or before the expiration of forty-five (45) days from this date.

"To secure" shall mean that the structure(s) shall be sealed with such materials as may be necessary to insure that the structure cannot be freely entered.

In the event that this Order has not been complied with by the above stated

---

2. The evidence was in dispute as to whether this notice was issued based upon the previous actions taken by Garza, the Building Code Department, and Allison, or whether the notice was issued as a result of the investigations of complaints of the Corbins' future neighbors. However, Garza reported that the Building Code defines unsafe buildings and structures as those buildings and structures that are structurally unsafe or that constitute a hazard to the health, safety, or public welfare because of inadequate maintenance, and that the Building Code further provides that all unsafe buildings are to be declared public nuisances and abated. We note that this language is very similar to the language relied upon by the Housing Standards Commission in issuing the order.

date, the Codes Administrator is hereby authorized, at his discretion, to demolish the structure and assess the expenses thereof against the property to which the structure(s) was attached.

City Bank also sent a representative to the Housing Standards Commission hearing, and three days later sent a letter to the Corbins notifying them that they were in default because 1) they had not kept the property in good repair and condition, and 2) they had let their insurance lapse. City Bank accelerated the Corbins' interim financing note and refused to renew it. In the letter, the bank stated that its decision was based upon complaints against the property as being incomplete and a public nuisance at the hearing. On September 27, City Bank sent another letter to the Corbins giving them thirty days to pay all indebtedness owed.

After City Bank called the note, the Corbins were able to get financing from Portales National Bank in an amount sufficient to cover existing debt, but did not get any significant additional funds to complete the house. Portales National Bank later became unable to continue on the loan, so the Corbins secured a loan from Western National Bank for the amount already expended on the house. However, when federal bank examiners informed Western National Bank officials that the Corbin loan was improperly secured, the Corbins were notified that Western National could not continue the loan. The Corbins were able to secure a loan of approximately $60,000 from friends to pay off Western National Bank and to pay taxes in order to avoid foreclosure, but the house remained unfinished.

In November of 1990, over one year from the date the Housing Standards Commission issued its order, Lubbock filed suit for an injunction to enforce the order and abate the house as a nuisance. The Corbins counterclaimed under § 1983 asserting violations of their right to due process and to equal protection. The City filed motions for summary judgment on the counterclaim and its injunction, both of which were denied. The case was tried to a jury, and the court rendered a judgment on the verdict awarding the Cor-

bins approximately $303,000. It is from this judgment that Lubbock appeals.

## Points of Error

In addressing the points of error necessary for a proper disposition of this appeal, we begin with point three, in which Lubbock asserts the trial court erred as a matter of law in denying and refusing to sustain its motion for judgment *non obstante veredicto* with respect to the Corbins' § 1983 counterclaim. We agree.

■ A trial court may disregard a jury's answer, and render a judgment *non obstante veredicto*, only if a directed verdict would have been proper. Tex.R.Civ.P. 301; *Fort Bend County Drainage D. v. Sbrusch*, 818 S.W.2d 392 (Tex.1991); *Allison v. Parks*, 763 S.W.2d 606, 608 (Tex.App.—Fort Worth 1989, writ denied). Whether the trial court erred in failing to grant a motion for judgment *non obstante veredicto*, is reviewed under the same standard as a legal sufficiency point. *Bel–Ton Elec. Service, Inc. v. Pickle*, 877 S.W.2d 789, 794 (Tex.App.—Dallas 1994, no writ). Therefore, we must consider only the evidence and reasonable inferences that tend to support the jury's findings, and uphold those findings if they are supported by more than a scintilla of evidence. *King v. Bauer*, 688 S.W.2d 845, 846 (Tex.1985); *James v. Vigilant Ins. Co.*, 674 S.W.2d 925, 926 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

The Corbins counterclaimed under § 1983 contending Lubbock violated their rights under the Fourteenth Amendment. They asserted that they were denied substantive due process and equal protection because 1) Lubbock's chief building inspector acted arbitrarily and capriciously in imposing a building schedule upon them, red-tagging their home in order to stop the construction, and denying an extension on a building permit; and 2) the Housing Standards Commission acted arbitrarily and capriciously in finding their house was a nuisance and in declaring the house substandard.

■ Section 1983 protects all rights guaranteed by the *Fourteenth Amendment, Matthias v. Bingley*, 906 F.2d 1047, 1051 (5th

Cir.1990), including the right to receive due process and to equal protection of the laws. U.S. CONST. amend. XIV, § 1. Municipal liability under § 1983 must be predicated on 1) "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers," or 2) pursuant to a governmental custom. *St. Louis v. Praprotnik,* 485 U.S. 112, 116, 108 S.Ct. 915, 923, 99 L.Ed.2d 107 (1988) (citing *Monell v. New York City Dept. Of Soc. Serv.,* 436 U.S. 658, 690, 98 S.Ct. 2018, 2035–36, 56 L.Ed.2d 611 (1978)).

The United States Supreme Court has set forth four guiding principles with respect to municipal liability. First, liability will result only for acts which the municipality has officially sanctioned or ordered. Second, only the acts of municipal officials who have final policymaking authority may subject the government to § 1983 liability. Third, whether a particular official has final policy making authority is a question of state law. Fourth, the challenged action must have been taken pursuant to a policy adopted by the official or officials responsible under state law for making policy in that area of the city's business. *St. Louis v. Praprotnik,* 485 U.S. at 124, 108 S.Ct. at 924–25 (citing *Pembaur v. Cincinnati,* 475 U.S. 469, 480, 482–83, 106 S.Ct. 1292, 1298–99, 1299–1300, 89 L.Ed.2d 452 (1986)). The Supreme Court has also explained that liability may be imposed for a single decision by municipal policymakers if the "decision to adopt that particular course of action is properly made by that government's authorized decisionmakers ..." *Pembaur v. Cincinnati,* 475 U.S. at 481, 106 S.Ct. at 1299.

Thus, the requisite authority to make municipal policy is necessarily the authority to make final policy, and "[w]hen an official's discretionary decisions are constrained by policies not of that official's making, those policies, rather than the subordinate's departures from them, are the act of the municipality. Similarly, when a subordinate's decision is subject to review by the municipality's authorized policymakers, they have retained the authority to measure the official's conduct for conformance with *their* policies." *St. Louis v. Praprotnik,* 485 U.S. at 127, 108 S.Ct. at 926.

■ In sum, to hold a city liable under § 1983 for an unconstitutional act of its employees, four elements are required: 1) an official policy or custom, 2) of the municipality's final policymaker, 3) that causes the plaintiff to be subjected to 4) a denial of a constitutional right. *Monell v. New York City Dept. Of Soc. Serv.* 436 U.S. at 694, 98 S.Ct. at 2037–38; *Grandstaff v. City of Borger, Tex.,* 767 F.2d 161 (5th Cir.1985); *Spencer v. City of Seagoville,* 700 S.W.2d 953 (Tex. App.—Dallas 1985, no writ).

As the Corbins have predicated Lubbock's liability under § 1983 upon actions taken by the Building Code Department and also by the Housing Standards Commission, we will examine separately the propriety of each based upon the record before us.

### The Building Code Department

The Corbins alleged Lubbock was liable for the actions of the Building Code Department because Max Garza, the Building Code Inspector, violated their rights to due process and equal protection of the laws by arbitrarily and capriciously imposing upon them a building schedule, by red-tagging their home causing a work stoppage, and by denying them an extension of a building permit. We disagree.

■ In order for the City of Lubbock to be liable for Garza's actions, the Corbins had to show that Garza was the final policymaker with respect to the area of the city's business to which the challenge was made, *Pembaur v. Cincinnati,* 475 U.S. at 482–83, 106 S.Ct. at 1299–1300; Garza would have to be the final authority on the issuance, conditioning, and denial of building permits. This, the Corbins failed to prove.

■ If an official's actions are subject to effective review procedures, the official has not received a complete delegation of authority, and does not wield final responsibility so as to create municipal liability. *See St. Louis v. Praprotnik,* 485 U.S. at 126, 108 S.Ct. at 925–26; *Worsham v. City of Pasadena,* 881 F.2d 1336, 1340–41 (5th Cir.1989). Garza testified, and Lubbock's Building Code reflects, that Garza's decisions were not final, but rather appealable to the Building Board

of Appeals. Therefore, although Garza did have some authority under the Building Code to make appropriate changes, those changes as well as his other actions were reviewable by a higher authority.

Thus, we conclude that Garza did not possess the requisite final policymaking authority upon which Lubbock's § 1983 liability could be based, and address the remaining aspect of point three, whether there is any evidence to support § 1983 liability based upon the actions of the Housing Standards Commission.

### Housing Standards Commission

With regard to the Housing Standards Commission, we need not undertake a discussion as to whether it is a final policymaker. Lubbock has not addressed the issue, and we conclude that regardless of whether it is a final policymaker, the Corbins failed to demonstrate that the commission interfered with or deprived them of a protectable constitutional right; such being a deprivation of property without due process, or a denial of equal protection.

#### A. Substantive Due Process

■ Although the evidence shows that 1) the Housing Standards Commission order arguably did not comport with the findings of the commission, and 2) the Corbin house was not structurally substandard as stated in the order,[3] we cannot say that the error affected a constitutionally protected property interest. In order to show a substantive due process deprivation of property, the contending party must prove 1) he had a constitutionally protectable interest in the property, and 2) the government deprived him of that interest

capriciously and arbitrarily. *Spence v. Zimmerman,* 873 F.2d 256, 258 (11th Cir.1989) citing *Hearn v. City of Gainesville,* 688 F.2d 1328, 1332 (11th Cir.1982).

■ The Corbins' assert they were unable to complete their home because of the effect the erroneous order had on their relationship to lending institutions. They argue that the substandard language in the order caused the lending institutions to withdraw financing, and this inability to obtain a loan prevented them from completing their house, thus depriving them of property.

We do not disagree with the Corbins that some cause and effect may have existed between the issuance of the order declaring the house substandard and withdrawal of financing. However, that withdrawal of financing does not equate to a deprivation of a property right. We can find no authority to support the existence of a federally protectable property interest in one's relationship to a lending institution, nor to the monies that the institution may lend. Furthermore, the evidence is undisputed that the Corbins obtained a loan from individuals subsequent to the order, and we perceive no bar to seeking such loans in the future. As a matter of law, the Corbins did not demonstrate interference with a protectable property interest.

#### B. Equal Protection Claim

The Corbins also assert a violation of equal protection in being referred to the Housing Standards Commission. They argue that no other new house under construction has ever been referred to the Housing Standards Commission and that such actions were improper procedure.

---

**3.** Mary testified that nothing was said about the house being substandard before or at the Housing Standards Commission hearing, and she was surprised that the order declared the house substandard and provided for potential demolition. Joy Ridlehuber, the Housing Standards Commission chairperson, admitted to Mary that their house was not a demolition case, and that the Commission wanted the house to be completed. Ridlehuber conceded that no motion was made at the hearing to find the house substandard, but rather uninhabitable. Ridlehuber also admitted the order she signed was a form order with standardized language, and did not actually fit

the Corbin situation. However, the order was never changed.

Ridlehuber and Allison testified at trial that the Housing Code defined a nuisance as "any attractive nuisance which may prove detrimental to children ... in a building." Ridlehuber said there was testimony at the hearing that children had been in the Corbin house, and that the openness and accessibility could create the nuisance. She explained that a house is substandard if it is a nuisance, but that such a finding does not necessarily mean the physical structure is substandard.

■ The Equal Protection Clause of the Fourteenth Amendment essentially directs "that all persons similarly situated should be treated alike." *Cleburne v. Cleburne Living Center*, 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1985). To assert an equal protection claim, the deprived party must establish that he was treated differently than other similarly-situated parties without a reasonable basis. *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1541 (11th Cir.1991), *cert. denied*, 502 U.S. 810, 112 S.Ct. 55, 116 L.Ed.2d 32 (1991).

■ The evidence shows that new houses under construction are not ordinarily referred to Housing Standards Commission. In fact Joy Ridlehuber, the Housing Standards Commission chairperson, conceded that the Corbin house was the only new house under construction referred to the Housing Standards Commission during her six-year tenure. However, the length of time it took the Corbins' to partially complete their home set them apart from other homebuilders, and § 203 of the Building Code under which permits are issued provides that:

> All buildings or structures which are structurally unsafe or not provided with adequate egress, or which constitute a fire hazard, or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety or health, or public welfare, by reason of inadequate maintenance, dilapidation, obsolescence, fire hazard, disaster damage, or abandonment, as specified in this Code or any other effective ordinance, are for the purpose of this Section, unsafe buildings.

> All such unsafe buildings are hereby declared to be public nuisances and shall be abated by repair, rehabilitation, demolition, or removal in accordance with the procedure specified in Chapter 15A HOUSING STANDARDS CODE, CODE OF ORDINANCES, City of LUBBOCK, TEXAS, or by any other procedures provided by law.

LUBBOCK, TEX., UNIFORM BUILDING CODE § 203 (1982).

This language from the Building Code clearly contemplates governance of specified situations by the Housing Standards Code, which is enforced through the Housing Standards Commission, the City Manager, the Director of Planning, and the Housing Standards Administrator. LUBBOCK, TEX., UNIFORM HOUSING CODE, ch. 15A, § 15A–1(a) (1973). Therefore, although no other new house had been referred to the Housing Standards Commission, it was not unreasonable for such procedure to be taken with respect to the Corbins. Hence, we conclude the Corbins proved no equal protection violation.

Lubbock also raises, as an argument under point three, that the Corbins could not base a § 1983 claim upon the language of the Housing Standard Commission's order because that order was a final appealable order, and was not appealed by the Corbins. Lubbock asserts that because the Corbins failed to exhaust their state administrative remedies, they cannot collaterally attack the substandard finding in the order. We agree.

■ Exhaustion of state administrative remedies is not always a prerequisite to an action under § 1983. *Patsy v. Board of Regents*, 457 U.S. 496, 499, 102 S.Ct. 2557, 2559, 73 L.Ed.2d 172 (1982). Such remedies are irrelevant considerations in determining the legal sufficiency of a substantive due process claim. *Brown v. Texas A & M University*, 804 F.2d 327, 336 (5th Cir.1986). However, in the absence of a § 1983 substantive due process claim, those remedial efforts must be taken before availing oneself of the appellate process.[4] In that regard, when the law has vested a special board, commission or tribunal with authority to hear and determine matters arising in the course of its duties, its decisions on those matters are conclusive, and like the judgments of courts, cannot be collaterally attacked in another proceeding. *Carr v. Bell Sav. And Loan*

---

4. The Corbins expressly state that their claim is a substantive due process claim. We note that the cases cited by Lubbock which assert that a claim is not actionable under § 1983 when an adequate state remedy exists are *procedural* due process cases, particularly *Marshall v. Norwood*, 741 F.2d 761 (5th Cir.1984) and *Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), and thus are entirely inapplicable to the case at hand.

*Ass'n,* 786 S.W.2d 761, 764 (Tex.App.—Texarkana 1990, writ denied).

■ The Housing Standards Commission's procedural guidelines provide a method of appeal, of which the Corbins failed to avail themselves. Their failure to appeal resulted in a final order, and we will not sit as that Board of Appeals to make a determination to which it was properly reserved. The Corbins as a matter of law did not prove their § 1983 substantive due process claim, and without the existence of that claim, they could not collaterally attack the factual validity of the order issued by the Housing Standards Commission in a subsequent enforcement proceeding. *Jolly v. State,* 856 S.W.2d 859, 861 (Tex.App.—Austin 1993, writ denied). Therefore, we conclude the Corbins were bound by the Housing Standards Commission order, and could not allege injury as the result of the commission's finding that their house was substandard.

As the record contains no evidence that Max Garza was a policymaker for purposes of § 1983 liability, or that the actions of the Housing Standards Commission either interfered with a constitutionally protectable right of the Corbins or denied them equal protection of the laws, point three is sustained.

In points of error two and four, Lubbock similarly challenges the trial court's denial of its motion for instructed verdict with respect to the Corbins' § 1983 counterclaim, and asserts there is no evidence or factually insufficient evidence to support the jury's finding of a § 1983 violation. For the reasons stated above under point of error three, we also sustain points two and four.

In points of error fourteen and fifteen, Lubbock claims the trial court erred in denying its request for injunctive relief. Lubbock asserted that because the Corbins did not appeal the order of the Housing Standards Commission, it was final and not subject to collateral attack. It therefore claimed entitlement to an injunction to enforce the order.

■ Lubbock has not addressed the nature of the injunction sought. However, because the injunction, if granted, would require the Corbins to do some positive act or particular thing, BLACK'S LAW DICTIONARY 784 (6TH ED. 1990); that being to clean up the property as specified in the order, we will review the denial of the injunctive relief under the standard governing mandatory injunctions. Whether to grant such an injunction is within the sound discretion of the trial court, and our review is limited to whether the action taken was an abuse of discretion. *Boatman v. Lites,* 888 S.W.2d 90 (Tex.App.—Tyler 1994, no writ); *Farmer's Marine Copper Works, Inc., v. Galveston,* 757 S.W.2d 148, 149 (Tex.App.—Houston [1st Dist.] 1988, no writ).

In the instant case, the trial court denied the requests for injunctive relief under the erroneous belief 1) that the Corbins had a meritorious § 1983 claim and could therefore avoid the requirement of exhaustion of remedies, and 2) that a fact issue existed as to whether the Housing Standards Commission order was final. As stated under point of error three, the Corbins did not prove their § 1983 substantive due process claim. Without the existence of that claim, they could not collaterally attack the factual validity of the order, *Jolly v. State,* 856 S.W.2d at 861, and are bound by its terms.

■ However, Lubbock has not directed us to a specific statute or code provision showing its entitlement to an injunction solely by virtue of the existence of the binding order, nor has it directed us to any case law authority or evidence upon which it otherwise bases entitlement. Consequently, we cannot say the trial court abused its discretion in denying the injunctive relief. Points fourteen and fifteen are overruled.

By point of error sixteen, Lubbock contends there was no evidence to support the finding that the house was not a nuisance, or alternatively that the finding is against the great weight and preponderance of the evidence. Because Lubbock neither cited authority nor facts in support of its position, Tex.R.App.P. 74(f), and because the issue was rendered erroneous in light of the binding effect of the Housing Standards Order, we deem unnecessary a discussion of this point of error.

Our determination that, as a matter of law, the Corbins did not prove a cause of action

under § 1983 and that they are bound by the final Housing Standards Commission order from which they failed to appeal, precludes a discussion of the remaining points of error. Tex.R.App.P. 90(a).

Accordingly, we reverse that portion of the judgment which awards the Corbins damages on their alleged § 1983 counterclaim and render judgment that the Corbins take nothing in their § 1983 counterclaim action, and we affirm the remaining portions of the judgment.

QUINN, J., recused, not participating.