Jason SAN MIGUEL & Lidia San Miguel, Appellants,

v.

CITY OF WINDCREST, Appellee.

No. 04–00–00244–CV.

Court of Appeals of Texas, San Antonio.

Aug. 16, 2000.

Rehearing Overruled Jan. 24, 2001.

---

Oscar L. Cantu, Jr., Nick Naram & Associates, P.C., San Antonio, for Appellant.

Michael S. Brenan, San Antonio, for Appellee.

Sitting: TOM RICKHOFF, Justice, ALMA L. LÓPEZ, Justice, KAREN ANGELINI, Justice.

## OPINION

KAREN ANGELINI, Justice.

In this accelerated appeal, Jason and Lidia San Miguel appeal the trial court's interlocutory order granting the City of

Windcrest ("Windcrest") temporary and mandatory injunctions. In five issues, the San Miguels claim the trial court erred in granting the injunctions. We disagree and affirm the trial court's judgment.

### Factual and Procedural Background

Jason and Lidia San Miguel operate, in their home, a business for the care of elderly individuals. Windcrest filed suit against the San Miguels, seeking temporary and mandatory injunctions prohibiting the San Miguels from operating the group home and requiring them to remove two of the four elderly individuals living there. Windcrest, in its petition, alleged that the San Miguels violated its Code of Ordinances by housing, in their single-family dwelling, more than two individuals who are not related to them by blood, marriage, or adoption. The trial court granted the temporary injunction restraining and enjoining the San Miguels from housing the elderly individuals in their home. The trial court also issued a mandatory injunction requiring the San Miguels to remove from their residence three of the elderly individuals who lived there. The San Miguels appeal the issuance of the injunctions.

### Standard of Review

In an appeal from the granting of a temporary or mandatory injunction, the merits of the underlying case are not at issue. *See Davis v. Huey,* 571 S.W.2d 859, 861 (Tex.1978); *Ireland v. Franklin,* 950 S.W.2d 155, 157 (Tex.App.—San Antonio 1997, no writ). Rather, our review is limited to a determination of whether the trial court abused its discretion in granting or denying the injunction. *See Davis,* 571 S.W.2d at 862; *Ireland,* 950 S.W.2d at 157; *City of Lubbock v. Corbin,* 942 S.W.2d 14, 23 (Tex.App.—Amarillo 1996, writ denied). The only question before a trial court

when faced with a request for a temporary injunction is whether the applicant is entitled to the preservation of the status quo of the suit's subject matter pending trial on the merits. *See id.* The trial court abuses its discretion in answering this question when it misapplies the law to the facts of the case or when the evidence does not reasonably support the conclusion that the applicant has a probable right of recovery. *See State v. Southwestern Bell Tel. Co.,* 526 S.W.2d 526, 528 (Tex.1975); *Long John Silver's, Inc. v. Martinez,* 850 S.W.2d 773, 775 (Tex.App.—San Antonio 1993, writ dism'd w.o.j.). Where the facts, however, definitively indicate that a party is in violation of the law, the trial court loses its discretion and must enjoin the violation. *See Priest v. Texas Animal Health Com'n,* 780 S.W.2d 874, 876 (Tex.App.—Dallas 1989, no writ); *City of Houston v. Memorial Bend Util. Co.,* 331 S.W.2d 418, 422 (Tex.Civ.App.—Houston 1960, writ ref'd n.r.e.).

### Discussion

On appeal, the San Miguels raise several defenses to Windcrest's request for injunctive relief. In five issues, the San Miguels claim the trial court erred in issuing the injunctions because: Windcrest failed to plead and prove a probable injury; the issuance of the injunction accomplishes all objectives of the litigation without a trial; the injunction destroys the status quo; the injunction does not give the San Miguels the opportunity to purge themselves of contempt; and Windcrest is not entitled to relief in equity and has no standing to seek an injunction under Chapter 142 of the Texas Health and Safety Code.

### Probable Injury Showing

In their first issue, the San Miguels assert the trial court improperly granted Windcrest's request for a temporary in-

junction because Windcrest did not plead and prove a probable injury. We disagree.

▅▅▅ Generally, for a temporary injunction to properly issue, the applicant must show a probable right of recovery, probable injury, and that there is no other adequate remedy at law available. *See PILF Investments, Inc. v. Arlitt,* 940 S.W.2d 255, 258 (Tex.App.—San Antonio 1997, no writ); *Home Sav. of America, F.A. v. Van Cleave Dev. Co.,* 737 S.W.2d 58, 59 (Tex.App.—San Antonio 1987, no writ). A city seeking to enjoin a violation of its zoning ordinance, however, need not prove that a violation would cause injury to it or its residents. *See Swinney v. City of San Antonio,* 483 S.W.2d 556, 559 (Tex. Civ.App.—San Antonio 1971, no writ); *Houston Compressed Steel Corp. v. State,* 456 S.W.2d 768, 775 (Tex.Civ.App.—Houston (1 st Dist.) 1970, no writ). Similarly, an act that violates a statute or city ordinance may be enjoined without a showing that the legal remedy is inadequate. *See Schleuter v. City of Fort Worth,* 947 S.W.2d 920, 932 (Tex.App.—Fort Worth 1997, pet. denied) (city ordinance); *Bexar County v. North East Indep. Sch. Dist.,* 802 S.W.2d 854, 859 (Tex.App.—San Antonio 1990, writ denied) (statute).

In this case, Windcrest sought to enjoin the San Miguels' actions which violate its Code of Ordinances. The San Miguels' home is zoned as an "R–1" One-Family Dwelling. Under the Code, an "R–1" building or premises may be used as a single-family dwelling. *See* WINDCREST, TEX., ORDINANCES ch. 23, subch. 23.800, § 23.801 (1998). The Code defines a fami-

ly as "[o]ne or more individuals living together as a single housekeeping unit, in which not more than two (2) individuals are unrelated by blood, marriage, or adoption." *See id.* subch. 23.500.

▅▅▅ The San Miguels operate a business in their home, wherein they provide care to elderly individuals. The trial judge found that the San Miguels violated the Zoning Code of the City of Windcrest by "housing four individuals unrelated to them by blood, marriage or adoption at their residence ..."[1] The trial court's finding that the San Miguels violated the zoning ordinance constitutes the injury necessary to the granting of a temporary injunction and Windcrest was not required to show that any other legal remedy would be inadequate. Proof of a violation of the ordinance alone establishes a sufficient case for injunctive relief. *See City of Fort Worth v. Johnson,* 388 S.W.2d 400, 402 (Tex.1964). We therefore, overrule the San Miguels' first issue.

### Status Quo

▅▅▅ In their second and third issues, the San Miguels assert the trial court erred in granting Windcrest's request for a temporary injunction because doing so destroys the status quo and resolves the goals of the pending litigation without the benefit of a trial. The only question before the trial court at a temporary injunction hearing is whether the applicant is entitled to preservation of the status quo pending a trial on the merits of the suit. *See Davis,* 571 S.W.2d at 862. Although

---

**1.** The San Miguels and Windcrest dispute the nature of the business the San Miguels conduct in their home. The San Miguels argue that the business is an "assisted living care home" as defined in the Texas Health and Safety Code, section 142. Windcrest, however, claims that Chapter 247 of the Health and Safety Code controls. Despite their conten-

tions, the parties' arguments are unnecessary to the disposition of this case. The trial court found, without regard to the nature of the business, that by simply housing four individuals, unrelated by blood, marriage, or adoption, the San Miguels were violating the Windcrest City Code.

the San Miguels correctly argue that a ruling on a temporary injunction may not be used to obtain an advanced ruling on the merits of a case, they incorrectly assert that that is what has happened here. *See Iranian Muslim Org. v. City of San Antonio,* 615 S.W.2d 202, 208 (Tex.1981).

In making their assertion that the granting of the temporary injunction destroys the status quo, it appears the San Miguels understand the status quo to be the situation at the time the order was sought. Where the acts sought to be enjoined, however, violate an expressed law, "the status quo to be preserved could never be a condition of affairs where the respondent would be permitted to continue the acts constituting that violation." *See Houston Compressed Steel Corp.,* 456 S.W.2d at 773. Instead, the status quo to be preserved by the issuance of a temporary injunction is "the last actual, peaceable, noncontested status which preceded the pending controversy." *See Southwestern Bell Tel. Co.,* 526 S.W.2d at 528; *Edgewood Indep. Sch. Dist. v. Paiz,* 856 S.W.2d 269, 270 (Tex.App.—San Antonio 1993, no writ). Accordingly, the status quo to be preserved in this case is the San Miguels' home before two of the four elderly individuals began living there.

By requiring the San Miguels to return their home to a status that complies with the Windcrest ordinance and thereby preserving the status quo, the injunction does not resolve all the goals of the underlying litigation. In their first amended answer the San Miguels raise four affirmative defenses. They assert that Windcrest's zoning ordinance is void for vagueness and that it is unconstitutional on multiple grounds, as well as that Windcrest failed to plead and prove a probable injury, and that the issuance of the injunction destroys the status quo. In addition, the San Miguels brought a counterclaim against Windcrest alleging intentional, wanton, or reckless interference with their contractual relationship with the State and that Windcrest brought its initial cause of action in bad faith. None of these issues was addressed or resolved by the trial court in granting the temporary injunction and they continue to be unresolved. We, therefore, overrule the San Miguels' second and third issues.

## Contempt

In their fourth issue, the San Miguels maintain that the injunction, as issued, is void. The San Miguels specifically complain that because the injunction does not name those individuals who should be removed and because the deadline it imposes is unreasonable, they are incapable of complying with the order. We disagree.

An order granting an injunction must describe in reasonable detail the act or acts sought to be restrained. *See* Tex.R. Civ. P. 683. This requirement is mandatory and must be strictly followed. *See InterFirst Bank San Felipe, N.A. v. Paz Constr. Co.,* 715 S.W.2d 640, 641 (Tex. 1986). According to the Texas Supreme Court,

an injunction decree must be as definite, clear and precise as possible and when practicable it should inform the defendant of the acts he is restrained from doing, without calling on him for inferences or conclusions about which persons might well differ and without leaving anything for further hearing. But obviously the injunction must be in broad enough terms to prevent repetition of the evil sought to be stopped, whether the repetition be in form identical to that employed prior to the injunction or (what is far more likely) in somewhat different form calculated to circumvent the injunction as written.

*San Antonio Bar Ass'n v. Guardian Abstract & Title Co.,* 156 Tex. 7, 291 S.W.2d 697, 702 (1956) (citations omitted).

██ The order here restrains the San Miguels from continuing to house three of the four individuals in their home and requires them "to remove from their residence ... all persons who are not related to them by blood, marriage or adoption, with the exception of one person who is not related to them by blood, marriage or adoption." Although the order is somewhat broad and leaves the San Miguels with the decision of who they must remove, this description is sufficiently detailed to provide the San Miguels with notice of those acts being restrained and what they must do to comply with the order. *See Republic Western Ins. Co. v. State,* 985 S.W.2d 698, 706 (Tex.App.— Austin 1999, writ dism'd w.o.j.). By listing only the number of people to be removed, the injunction specifically prohibits the San Miguels from allowing more than one person not related by blood, marriage or adoption from living in their home. The injunction's wording, by design, also prevents them from circumventing the injunction simply by allowing other individuals with names different than those listed to live in their home.

██ The San Miguels imply that the compliance deadline imposed by the injunction is unreasonable, making it impossible to purge themselves of contempt. However, at the injunction hearing, the trial court orally granted Windcrest's request for the injunction. At that time, the trial court unequivocally stated that the San Miguels would have two weeks from the date of the hearing to comply with the order. Although two weeks might not be an ideal length of time for the San Miguels to remove three people from their home, it is certainly reasonable and not impossible to comply with.

Windcrest points out that the order automatically expires once the San Miguels receive a State license authorizing them to operate an assisted living facility in their home. Windcrest argues that by obtaining such a license, the San Miguels would be able to purge themselves of contempt. We agree and overrule the San Miguels' fourth issue.

### Equity

In their final issue, the San Miguels claim that Windcrest has no standing to bring suit under Chapter 142 of the Texas Health and Safety Code. They specifically complain that only the Attorney General has standing to bring suit for an injunction under this chapter. *See* TEX. HEALTH & SAFETY CODE ANN. § 142.013 (Vernon 1992). However, Windcrest did not bring suit under the Health and Safety Code, but instead, sought to enforce its own city code. We, accordingly, disagree with the San Miguels' contention.

██ The San Miguels also submit in their fifth issue, that Windcrest sought to delay or prevent the issuance of a state license to them. Windcrest, according to the San Miguels, is therefore not entitled to equitable injunctive relief because the city is guilty of inequitable conduct and has "unclean hands." Windcrest counters that the San Miguels have offered no evidence of such conduct. We agree with Windcrest's assertion.

██ The San Miguels contend that they made multiple attempts to contact Windcrest city officials; however, many of their attempts went unanswered. They also claim that Windcrest made misrepresentations to the State regarding a fire inspection "to dissuade, delay or prevent the issuance of the State License to the [San Miguels]." The San Miguels offered no evidence of such inequitable behavior

for the trial court's consideration during the injunction hearing. The only mention of Windcrest's "bad faith" is in the San Miguels' pleadings. Pleadings, however, are not evidence. *See Laidlaw Waste Sys. (Dallas), Inc. v. City of Wilmer,* 904 S.W.2d 656, 660 (Tex.1995). Because we find the San Miguels offered no evidence of Windcrest's alleged inequitable behavior, we cannot find the trial court abused its discretion in granting Windcrest's request for injunctive relief.

## Conclusion

We find the trial court did not abuse its discretion in granting Windcrest's request for injunctive relief. Accordingly, we affirm the trial court's judgment.