

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00450-CV

Steve **FREY** and Lisa Frey,
Appellants

v.

**CST PROPERTIES, LLC,**
Appellee

From the 407th Judicial District Court, Bexar County, Texas
Trial Court No. 2013-CI-08055
Honorable Barbara Hanson Nellermoe, Judge Presiding

Opinion by:    Luz Elena D. Chapa, Justice

Sitting:        Catherine Stone, Chief Justice
                Marialyn Barnard, Justice
                Luz Elena D. Chapa, Justice

Delivered and Filed:  February 26, 2014

AFFIRMED

This is an appeal from the trial court's denial of Steve and Lisa Frey's request for a temporary injunction to require removal of a fence and landscaping that allegedly violate a restrictive covenant and block an easement. Because the record contains conflicting evidence regarding whether the covenant and easement were breached, we conclude the trial court did not abuse its discretion in denying the temporary injunction.

**BACKGROUND**

The Freys sued CST for interference with their easement rights, seeking a declaratory judgment, damages and an injunction. The Freys alleged that CST installed a fence and landscaping along the boundary between the two properties that prevent free access between the properties and violate the recorded restrictive covenants and easement. CST alleged as an affirmative defense that the Freys' prior material breach of the easement agreement justifies and excuses any alleged breach of the agreement by CST. In addition, CST filed a counterclaim, alleging the Freys breached the easement agreement by failing to have adequate parking. After an evidentiary hearing, the trial court denied the Freys' application for a temporary injunction. No findings of fact and conclusions of law were requested or made, and this interlocutory appeal followed.

The evidence at the temporary injunction hearing established that the Freys and CST own adjacent lots in a shopping center located on the northeast corner of Bandera Road and NW Loop 410 in Leon Valley. The shopping center was originally developed as two parcels, Parcels I and II. Parcel I was much larger, occupied the entire southern section and the corner of the center, and had direct access to both Bandera Road along its southern property line, and to the northeast-bound frontage road to NW Loop 410 along its western property line. Parcel II occupied the northern section of the center and had direct access only to the one-way northeast-bound frontage road to NW Loop 410. In 1988, Parcel II was subdivided into Lots 9 and 10. The Freys are the current owners of Lot 9, the northernmost lot. CST is the current owner of Lot 10, which lies between Lot 9 and Parcel I.

In 1975, the owners of Parcels I and II entered into a Declaration of Covenants and Encumbrances. The Declarations were amended in 1986 and 1988 by the successor owners of

Parcels I and II, before Parcel II was subdivided.  The Declaration states that its provisions attach to and run with the Property (Parcels I and II) for sixty years, are binding upon and inure to the benefit of each parcel, and are binding upon the parties, their successors, heirs, assigns, and any other person acquiring any right, title, or interest in the property.  The Declaration provides that all of the covenants, obligations, restrictions, and easements granted, created, or reserved therein are deemed to be burdens upon Parcels I and II and appurtenant to and for the benefit of Parcels I and II.  The Declaration provides it may be amended only by the then fee owners of the property.  The Declaration, as amended, contains the following provisions:

> Par. 9.  Common Area.
>
> Common Area is that area devoted to ingress, egress, parking, driveways, curbs, sidewalks, passageways, permitted signs, planters and landscaped areas and lighting facilities for same.  . . . [T]here shall be on each parcel at least one (1) automobile parking space for each two hundred (200) square feet of interior floor space of all buildings on such parcel (excluding office mezzanine areas related to retail). . . .
>
> The parking and vehicular traffic patterns on Parcel II shall be designed and installed so that the entire Common Area of Subject Property[1] constitutes an integrated parking area to serve all the buildings located on Subject Property.
>
> . . .
>
> Par. 16.  Ingress and Egress.
>
> First Party grants to Second Party for the benefit of Parcel II and Second Party grants to the First Party for the benefit of Parcel I mutual nonexclusive easements for ingress and egress by vehicular and pedestrian traffic and customer vehicular parking over and across the Common Areas (except the landscaped areas) and no barricades or structures which prevent or hinder such ingress, egress and parking shall be maintained . . .

The Declaration was last amended in March 1988.

---

[1] The Declaration defines "Subject Property" as the entirety of Parcels I and II.

In June 1988, Parcel II was subdivided into Lots 9 and 10, and the lots were sold. On June 9, 1988, the owners of Lot 9 (Conrad's Automotive Center, Inc.) and Lot 10 (John and Rebecca Paalman) entered into and recorded a Reciprocal Easement Agreement ("the REA"). The REA provides that the reciprocal and mutual easements granted therein are deemed appurtenant to and to run with the ownership of Lots 9 and 10 and that the easements are of perpetual duration, unless cancelled by mutual agreement of the then owners of the property in a recorded instrument. The REA further provides:

### Location and Purpose of Easement

5. PAALMAN grants to CONRAD for the benefit of [Lot 9] and CONRAD grants to PAALMAN for the benefit of [Lot 10] mutual nonexclusive easements for ingress and egress of vehicular and pedestrian traffic and vehicular parking over and across the common areas (except the landscaped areas) and no barricades or structures which prevent or hinder such ingress, egress and parking shall be maintained, provided, however that either party may, without notice or permission from the other party, build structures or improvements on any portion of their respective property which would limit the extent of the easements created herein. However, said improvements must be in compliance with all applicable laws, rules, ordinances, and regulations, and restrictive covenants . . .

### Common Area

6. Common Area is that area devoted to ingress, egress, parking and landscaping. The common area to building area ratio for each respective parcel shall be at no time less than three to one, and there shall be on each parcel at least one parking space for two hundred (200) square feet of interior floor space on such parcel. . . .

The parking and vehicular traffic patterns shall be designed and installed so that the entire common area of [Lot 10] and [Lot 9] constitutes an integrated parking area to serve all the buildings located on [Lot 10] and [Lot 9].

Neither the Declaration nor the REA has been cancelled or terminated.

Conrad's Automotive Center developed Lot 9, the northernmost lot furthest from Parcel I, in 1988, and operated its business on the property until 2004, when the property was sold to the Freys. The Freys have operated a retail mattress store on the property since then, except for a brief

period from December 2011 to May 2012. A building was constructed on Lot 10 in 1996, and it was occupied by a Petco store from 1996 to 2007. Lot 10 was vacant from 2007 until June 2012, when CST purchased it.

The southern side of the Freys' building abuts the property line with CST's Lot 10. There are paved common areas across the front of the Freys' building, which faces the frontage road, along the northern side of the building, and behind the building. The common areas of Lot 10 run in front of CST's building, which also faces the frontage road, and along the north side of Lot 10, between CST's building and the Freys' building. The common areas in front and behind the Freys' building abut the common areas belonging to CST. Both the Freys' property and CST's have curb cuts providing direct access to the Loop 410 frontage road.

Steve Frey testified that when he purchased Lot 9 in 2004, there were about ten parking spaces on his lot, the same as there are now. He conceded that the property does not meet the ratio of one space per 200 feet of interior space specified by the Covenant and REA. Frey also testified that when he bought the property from Conrad's, there was free access across the common areas in front of the buildings on each lot. Frey acknowledged that at the time of purchase, there was evidence there had once been some kind of curb or speed bump along the property line between Lots 9 and 10, running from the front corner of his building, across the common area, to the street curb of the Loop 410 frontage road. However, Frey testified the structure was gone when he bought the property and the surface was relatively smooth, allowing free access from one lot to the other in front of the buildings. Frey also testified that this allowed his customers to access Bandera road by crossing in front of Petco and then crossing the common area on Parcel I.

CST purchased Lot 10 in June 2012. Larry McColm, one of the managing members of CST, testified he visited the property one time before it was purchased, and at that time the mattress

store was not doing business and there were no vehicles driving across the lots. McColm testified the building and grounds required extensive repairs and renovation due to lack of maintenance during the years the building was vacant. In addition to renovating the building, CST prepared a landscape plan and decided to erect a fence along the property line across the common area in front of the buildings.

CST hired a contractor to install a chain link fence that runs thirty-four feet along the property line between the two lots at the front of the property. The ends of the fence are anchored in the concrete remnants of an earlier curb. In addition, CST removed the asphalt on its side of the fence, installed a two-foot wide planter along the fence line, and planted bamboo. CST marked parking spaces and added parking stops facing the fence. CST did not obtain a fence permit from the City of Leon Valley as required by city ordinance.[2] The fence and planter completely block access between the properties across the parking areas in front of the buildings.

Frey testified that the only means of entering or exiting his property now is through the one way frontage road of NW Loop 410. He presented some evidence that his business has suffered since the easement was obstructed. Frey also testified he was in negotiations to sell the property when the fence was erected, and that CST's refusal to remove the fence caused him to lose a contract because the buyer would not close unless the fence was removed.

McColm testified the fence is necessary and justified because the Freys are in violation of the parking ratio requirements of the Declaration and the REA. He believes blocking access is necessary to prevent potential spillover parking from Lot 9 onto Lot 10. McColm also testified that the fence CST erected does not completely block access between the two properties. McColm

---

[2] CST received approval from the Texas Department of Transportation for the part of its landscaping plan that runs along the NW Loop 410 frontage road because it is in the Department's right-of-way. It does not appear from the record that any part of the fence and landscaping at issue in this case is in the right-of-way.

testified that the paved area that runs along the far side of the Freys' building and then behind it abuts the back of CST's parking lot. McColm testified that the only reason there is not free vehicular and pedestrian access across the properties in this area is that the Freys installed a gated fence along the boundary between the properties from the back of their building to the back property line. McColm testified the fence is on the Freys' property, they erected it, and they control the gate access. No evidence contradicting this testimony was offered by the Freys.

### REQUIREMENTS FOR TEMPORARY INJUNCTION AND STANDARD OF REVIEW

The issue before the trial court at a temporary injunction hearing is whether the applicant is entitled to preserve the status quo of the subject matter of the suit pending trial on the merits. *Davis v. Huey*, 571 S.W.2d 859, 862 (Tex. 1978); *San Miguel v. City of Windcrest*, 40 S.W.3d 104, 107 (Tex. App.—San Antonio 2000, no pet.). The "status quo" is the last actual, peaceable, noncontested status which preceded the pending controversy. *Id.* at 109; *Benavides Indep. Sch. Dist. v. Guerra*, 681 S.W.2d 246, 249 (Tex. App.—San Antonio 1984, writ ref'd n.r.e.); *Scott v. Rheudasil*, 614 S.W.2d 626, 630 (Tex. Civ. App.—Fort Worth 1981, no writ), *see In re Newton*, 146 S.W.3d 648, 651 (Tex. 2004).

To be entitled to issuance of a temporary injunction, the applicant must show a probable right to recover at trial and a probable interim injury should the court fail to grant the temporary relief. *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002). However, an applicant seeking to enforce a covenant restricting the use of land who shows a distinct or substantial breach is not required to offer proof of the amount of damages or that the injury will be irreparable. *Protestant Episcopal Church Council of Diocese of Tex. v. McKinney*, 339 S.W.2d 400, 403 (Tex. 1960); *Munson v. Milton*, 948 S.W.2d 813, 815-16 (Tex. App.—San Antonio 1997, pet. denied);

*Guajardo v. Neece*, 758 S.W.2d 696, 698 (Tex. App.—Fort Worth 1988, no writ); *see* Tex. Civ. Prac. & Rem. Code Ann. § 65.011(5) (West 2008).

The trial court's decision to grant or deny a temporary injunction is within its sound discretion, and we may reverse only if there has been a clear abuse of discretion. *Davis*, 571 S.W.2d at 861-62. In our review, we may not assume that the evidence presented at the temporary injunction hearing will be the same as the evidence developed at trial, and we may not infringe on the applicant's right to a full trial by determining the merits of the underlying case. *Id.* at 862. We may not substitute our judgment for that of the trial court, even if we would have reached a contrary conclusion. *Butnaru*, 84 S.W.3d at 211. Instead, we view the evidence in the light most favorable to the trial court's order and indulge every reasonable inference in its favor. *Ireland v. Franklin*, 950 S.W.2d 155, 157 (Tex. App.—San Antonio 1997, no writ). The trial court does not abuse its discretion if some evidence reasonably supports its decision or if the court bases its decision on the probable right of recovery on conflicting evidence. *Butnaru*, 84 S.W.3d at 211; *Davis*, 571 S.W.2d at 862. Because findings of fact and conclusions of law were not requested or filed, we must affirm its order on any legal theory supported by the record. *Davis*, 571 S.W.2d at 862; *Ireland*, 950 S.W.2d at 157.

**DISCUSSION**

On appeal, the Freys contend they met their burden in the trial court and the trial court abused its discretion in denying the temporary injunction because they "allege[d] a legitimate cause of action and present[ed] evidence that sustains that cause of action." CST contends the trial court did not abuse its discretion because (1) the Freys improperly sought a mandatory injunction that would change instead of preserve the status quo; (2) the Freys cannot succeed on the merits because the Freys' prior material breach of the parking ratio requirement excuses CST from any

obligation to honor the easement; (3) the Freys did not show a probability of success on the merits because CST only limited the extent of the easement, which the REA expressly allows, and did not completely block pedestrian and vehicular traffic between the two lots; and (4) the Freys or their predecessors in interest waived any right to enforce the easement by previously allowing the construction of the barrier in the same location as CST's fence and landscaping.

We agree with the Freys that the status quo in this case is the state of the property before CST's actions that are alleged to violate the Covenants. "If an act of one party alters the relationship between that party and another, and the latter contests the action, the status quo cannot be the relationship as it exists *after* the action." *Benavides*, 681 S.W.2d at 246. The status quo the Freys sought to maintain was free access and movement across the front of the lots, as the undisputed evidence at the hearing showed there had been free access since at least 2004. The Freys were entitled to seek the relief and the fact it would have required action on the part of CST was no bar.

We also agree with the Freys that any violation by them of the parking ratio requirements in the Declaration and REA is not a defense to their cause of action for CST's interference with easement rights and has no bearing on whether the trial court should have granted the temporary injunction. CST correctly asserts construction and interpretation of the Declaration and REA is governed by the general rules of contract construction. *See Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). However, CST then argues, without any citation to authority, that enforcement of the Declaration and REA is governed by contract law and that any breach of the covenants or easements by CST is excused by the Freys' prior material breach of a *different* covenant. We disagree.

The covenants in the Declaration, as well as the easements granted in the REA run with and are appurtenant to the land. They are enforced as property rights, not contract rights. *Ortiz v. Jeter*, 479 S.W.2d 752, 758-59 (Tex. App.—San Antonio 1972, writ ref'd n.r.e.) (holding restrictive covenants create an equitable servitude and are akin to easements; they are enforced as property rights); *see City of Heath v. Duncan*, 152 S.W.3d 147, 151-52 (Tex. App.—Dallas 2004, pet denied) (deed restrictions are property rights that may not be taken without compensation); *City of Houston v. McCarthy*, 464 S.W.2d 381 (Tex. Civ. App.—Houston [1st Dist.] 1971, writ ref'd n.r.e.) (negative easement created by restrictive covenant is a compensable property right). The covenants in the Declaration and the REA may be terminated by agreement of the owners of the property or if they become unenforceable by abandonment, acquiescence, or waiver. *See Ortiz*, 479 S.W.2d at 576. We have found no authority and CST cites none that supports its contention that a restrictive covenant may become unenforceable because the party seeking to enforce it has previously violated a *different* covenant. Nor has CST provided any support for its contention that the Freys' violation of a *different* covenant is a proper defense to or legal justification for CST's interference with easement rights. The Freys' alleged violation of the parking ratio requirements is properly asserted, as CST has done, in a counterclaim. We conclude that neither CST's allegation that the Freys violated the parking ratio requirements nor the Freys' contention that the parking ratio requirements have been waived and abandoned have any bearing on whether the Freys showed a probable right of recovery for interference with their easement rights.

CST next argues that the trial court did not abuse its discretion because the Freys did not establish CST breached the Declaration or the REA, and thus failed to show a probability of success on the merits. Neither the Declaration nor the REA establishes an easement in a particular location. They each require that the parking and traffic patterns on the property be designed and

installed so that "the entire Common Area . . . constitutes an integrated parking area to serve all the buildings" on the property and require that there be "ingress and egress for vehicular and pedestrian traffic and vehicular parking over and across the common areas" of the property. However, both documents allow for landscaped areas that might hinder ingress, egress, or parking. Moreover, the REA expressly provides:

> . . . either party may, without notice or permission from the other party, build structures or improvements on any portion of their respective property which would limit the extent of the easements created herein. However, said improvements must be in compliance with all applicable laws, rules, ordinances, and regulations, and restrictive covenants . . . .

CST argues it has only limited the extent of the easement by installing the fence and landscaping. It provided uncontradicted evidence that vehicles and pedestrians would have unimpeded access across the paved common areas between the two lots behind the Freys' building, but for a gated fence installed and controlled by the Freys. CST contends that because it did not completely block free access over and across the common areas, the Freys failed to show a probable right of recovery on their claim that CST interfered with their easement and breached the REA and Declaration.

The Freys' position is that the primary purpose of the Declaration and REA is to allow free and unimpeded access across the common areas, and that structures or barricades that prevent or hinder such access are expressly prohibited. They contend the landscaping that completely blocks access between the properties in the front of the buildings frustrates the purpose of and violates the easements granted in the Declaration and REA. They further argue that CST's fence and planter are not authorized by the proviso of the REA because CST did not obtain the proper permits and the structures do not comply with applicable laws and regulations. The record supports the Freys' assertion that CST did not obtain a permit from the City of Leon Valley to install the fence, as required by city ordinance. The Freys appear to contend that the City Fire Code requires

approval for the two-foot-wide landscaping planter installed along the property line in front of the buildings. However, the evidence in the record before us does not support that contention.

Whether CST's fence and landscaping frustrate the purpose of the Declaration and REA such that they constitute a breach of the Freys' easement rights is a fact question on which the trial court heard conflicting, preliminary evidence. Although we agree with the Freys that they alleged a cause of action and presented evidence in support of it, the trial court also heard evidence that CST's actions did not completely foreclose pedestrian and vehicular traffic over and across the common areas of the properties, and CST's landscaping planter arguably comes within the proviso of the REA. Where there is conflicting evidence on the probability of a right of recovery, the trial court's decision cannot be held to be an abuse of its discretion. *See Davis*, 571 S.W.2d at 862. Because we must affirm on any theory that finds support in the record, we conclude the trial court did not abuse its discretion in denying the application for a temporary injunction.

Because of our disposition of the appeal, we need not decide whether the easement was waived or abandoned by the Freys or their predecessor in interest.

We therefore affirm the trial court's order denying the application for a temporary injunction.

Luz Elena D. Chapa, Justice