### CITY OF STAMFORD *v.* MILIVOJE KOVAC ET AL.
### (14644)

PETERS, C. J., CALLAHAN, BERDON, KATZ and PALMER, Js.

Argued September 30—decision released December 7, 1993

*James V. Minor,* assistant corporation counsel, with whom, on the brief, was *Daniel McCabe,* corporation counsel, for the appellant (plaintiff).

*Sigmund L. Miller,* for the appellees (defendants).

*Richard Blumenthal,* attorney general, and *Janet P. Brooks,* assistant attorney general, filed a brief for the commissioner of environmental protection as amicus curiae.

PETERS, C. J. The dispositive issue in this appeal is whether a temporary injunction should be deemed a

permanent injunction, and hence an appealable order, because the injunction orders restorative work to be performed in order to prevent further environmental degradation. The plaintiff, the city of Stamford, brought an action seeking temporary and permanent injunctive relief against the defendant Milivoje Kovac alleging that he was the owner of property that was subject to a stipulated judgment concerning impairment of a wetlands in violation of General Statutes § 22a-36 et seq. On the motion of the plaintiff, Sylvester Beserminje and Lida Nosik were subsequently added as defendants. After a hearing, the trial court issued a temporary injunction ordering Kovac and Beserminje (defendants) to remove fill and to replace native plants in order to stabilize the wetlands. The defendants appealed to the Appellate Court, which vacated the injunction. *Stamford* v. *Kovac,* 29 Conn. App. 105, 111, 612 A.2d 1229 (1992). We granted the plaintiff's petition for certification to appeal,[1] and now reverse.

The opinion of the Appellate Court reports the relevant facts. "Kovac, acting as trustee for Gavra M. Kovac, his brother, purchased a lot on Long Ridge Road, Stamford, on November 5, 1988. On July 7 or 8, 1990, approximately 11,000 square feet of wetlands were filled with 800 cubic yards of fill. Testimony indicated that the fill caused siltation of a downstream pond and potential pollution of an underground aquifer and local wells.

"The land was sold to Beserminje on July 16, 1990. Lida Nosik acted as Beserminje's attorney-in-fact at

---

[1] We granted the plaintiff permission to appeal the following questions: (1) "In the circumstances of this case, should the Appellate Court have treated the trial court's temporary injunction as an appealable final judgment?" and (2) "In the circumstances of this case, did the Appellate Court correctly conclude that the trial court exceeded its powers on issuing the temporary injunction?" *Stamford* v. *Kovac,* 224 Conn. 916, 617 A.2d 171 (1992).

the real estate closing. On August 21, 1990, the plaintiff brought this action alleging that Kovac [had] violated the Inland Wetlands and Watercourses Act, General Statutes § 22a-36 et seq., and seeking both temporary and permanent injunctions. Attached to the pleadings was a verification and certification statement alleging that unless a temporary injunction was granted to correct the illegal filling of the adjoining pond, there would be irreparable harm to the wetlands, pond and environment.

"Hearings regarding a temporary injunction were held on September 10, 11 and 17, 1990. A temporary injunction issued on October 23, 1990, ordering removal of the fill was subsequently vacated because it was directed solely against Kovac despite the fact that Beserminje [had become] the owner of the property on July 16, 1990. Neither Beserminje nor Nosik was a party at the time of the September hearings, but both were subsequently added as defendants on October 1, 1990.

"Another hearing regarding the issuance of a temporary injunction was held on April 1, 1991. Beserminje was not present, although his attorney-in-fact, Nosik, was and testified as to the circumstances surrounding Beserminje's purchase of the property.

"The trial court issued an 'Order Granting Preliminary Injunction' dated April 1, 1991, against Beserminje and Kovac. It was not directed against Nosik. The order, which was essentially the same as the October 23, 1990 temporary injunction, required Kovac and Beserminje (1) to remove the fill on lot A-2 and return said property to its condition and grade on the 1987 site plan, (2) to replant native plants to stabilize the disturbed ground after the fill is removed, (3) to regrade the lot to the original contours, and (4) to replant the lot with native species of plants and shrubs in order

to stabilize the ground and to prevent runoff. If the work was not done to the satisfaction of the plaintiff within forty-five days, Kovac and Beserminje would [be required to] pay a daily civil penalty of $250 to the plaintiff. The plaintiff was authorized to hire an independent contractor to comply with the order and the cost of the work would become a lien on the lot to be collected as a judgment." *Stamford* v. *Kovac,* supra, 106–108.

The Appellate Court, although it recognized that the trial court and the parties had treated the plaintiff's request for relief as an application for a temporary injunction and not for a permanent injunction, concluded that the terms of the order had converted it into a permanent injunction. Id., 110. Considering the order as a permanent injunction, the Appellate Court determined that its merits were immediately reviewable and that the trial court had exceeded its authority in ordering restoration of the wetlands prior to a final judgment rendered after a full exploration of all of the contentions of the parties. Id., 111. The court did not, therefore, consider the defendants' alternate claim that the temporary injunction violated their due process rights under the constitutions of the United States and the state of Connecticut. Id.

In the absence of an applicable statutory rule to the contrary, we have consistently held that a temporary injunction is not immediately appealable. See, e.g., *Pendiman Corp.* v. *White Oak Corp.,* 195 Conn. 393, 396–99, 488 A.2d 449 (1985); *Doublewal Corp.* v. *Toffolon,* 195 Conn. 384, 392–93, 488 A.2d 444 (1985); *Board of Education* v. *Shelton Education Assn.,* 173 Conn. 81, 88, 376 A.2d 1080 (1977); *Northeastern Gas Transmission Co.* v. *Brush,* 138 Conn. 370, 374–75, 84 A.2d 681 (1951); *Olcott* v. *Pendleton,* 128 Conn. 292, 294–95, 22 A.2d 633 (1941). The wisdom of such a rule is particularly evident in cases ordering the abatement of an

environmental hazard, which would otherwise continue unchecked during the pendency of the appeal process. See, e.g., Public Acts 1993, No. 93-244.[2] Just as environmental appeals must conform to the rules for the exhaustion of administrative remedies; *Polymer Resources, Ltd.* v. *Keeney,* 227 Conn. 545, 564–65, 630 A.2d 1304 (1993); so they must conform to the rules that postpone appeals until the trial court has rendered a final judgment.

The defendants claim that these well established principles do not apply in this case because the terms of the preliminary injunction issued by the trial court did more than preserve the status quo. The defendants maintain that, although the trial court might have issued a temporary injunction to enjoin further degradation of the environment in the future, the trial court lacked the authority to issue a temporary injunction that orders restoration of the environment. The defendants therefore contend that the trial court's mandatory injunction must be considered, despite its contrary denomination, a permanent injunction that is a final order. We disagree.

Although we have not previously considered whether a trial court has the authority to issue a mandatory injunction in advance of a final adjudication of the rights of the parties, there is ample precedent in other jurisdictions that a trial court, sitting as a court of equity, may issue such an order. Federal law has long taken a broad view of the equitable authority of trial courts to issue mandatory injunctions to preserve the status

---

[2] In § 1 (b) of No. 93-244 of the 1993 Public Acts, the legislature expressly provided the state a right to appeal the issuance of a court order enjoining or restraining the enforcement of certain cease and desist orders issued by the commissioner of environmental protection, as delineated in § 1 (a). The express inclusion of a right to appeal in this act underscores the absence of such a right in other circumstances. We presume that such a legislative enactment constitutes a change in existing law. *Hall Manor Owner's Assn.* v. *West Haven,* 212 Conn. 147, 155, 561 A.2d 1373 (1989).

quo. The Supreme Court of the United States has held that "where a defendant, with notice of the filing of a bill for an injunction, proceeds to complete the acts sought to be enjoined, the court may, by mandatory injunction, compel a restoration of the status quo." *Texas & New Orleans R. Co.* v. *Northside Belt Ry. Co.,* 276 U.S. 475, 479, 48 S. Ct. 361, 72 L. Ed. 661 (1928). Earlier, then Circuit Judge Taft affirmed the court's equitable authority to issue a preliminary injunction that compels affirmative conduct in order to preserve the status quo. "The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. Generally this can be accomplished by an injunction prohibitory in form, but it sometimes happens that the status quo is a condition not of rest, but of action, and the condition of rest is exactly what will inflict irreparable injury upon [the] complainant, which he appeals to a court of equity to protect him from. In such a case courts of equity issue mandatory writs before the case is heard on its merits." *Toledo, Ann Arbor & North Michigan Ry.* v. *Pennsylvania Co.,* 54 F. 730, 741 (N.D. Ohio 1893); see also *Peoria Ry. Co.* v. *United States,* 263 U.S. 528, 535, 44 S. Ct. 194, 68 L. Ed. 427 (1924). This principle continues to be followed in more recent federal cases. See, e.g., *Stell* v. *Board of Education,* 318 F.2d 425, 427 (5th Cir. 1963) (trial court ordered to fashion preliminary injunction to require local school board to make prompt and reasonable start toward school desegregation); *Bergen Drug Co.* v. *Parke, Davis & Co.,* 307 F.2d 725 (3d Cir. 1962) (trial court should have granted preliminary injunction requiring continuance of business relationship pending final adjudication of private antitrust action).

Courts in sister states have similarly recognized that trial courts have the discretionary authority, in the proper circumstances, to issue a preliminary manda-

tory injunction designed to preserve the status quo. See, e.g., *Board of Supervisors* v. *McMahon,* 219 Cal. App. 3d 286, 295, 268 Cal. Rptr. 219 (1990); *Bachman* v. *Harrington,* 184 N.Y. 458, 464, 77 N.E. 657 (1906). The status quo, for these purposes, has been defined as "the last, actual, peaceable, noncontested condition which preceded the pending controversy." *Chicago Title Ins.* v. *Chicago Title Ins. Co.,* 560 So. 2d 296, 297 (Fla. App. 1990); *Carriage Way Apartments* v. *Pojman,* 172 Ill. App. 3d 827, 836, 527 N.E.2d 89 (1988). Significantly, an Arizona court has upheld the authority of a trial court to issue a preliminary mandatory injunction requiring the removal of a wooden wall that allegedly diverted the natural flow of a local waterway in violation of applicable floodplain laws. *Burton* v. *Celentano,* 134 Ariz. 594, 596–97, 658 P.2d 247 (1982).

In light of these cases, we are unpersuaded that a temporary mandatory injunction differs in kind from any other temporary injunction. The merits of such an injunction are not immediately reviewable unless the mandatory action ordered by the trial court is not subsequently reversible if the trial court is found, upon appeal from the final judgment, to have exceeded its authority. *Northeastern Gas Transmission Co.* v. *Brush,* supra, 373.[3] In this case, if the defendants were finally to prevail, they could be fully compensated by way of monetary relief for any expenses incurred by them in complying with the court's order.[4] There is, therefore, no final judgment.

[3] On its facts, however, *Northeastern Gas Transmission Co.* v. *Brush,* 138 Conn. 370, 374–75, 84 A.2d 681 (1951), which involved condemnation of a home, raises considerations significantly different from those involved in the facts of this case.

[4] The defendants' brief does not argue to the contrary. Their position appears to be that a temporary mandatory injunction is unwarranted in the absence of "basically severe and emergency violations." The risk of continued environmental degradation might well constitute such a violation. In any case, however, the substantive justification for a temporary mandatory injunction does not affect its appealability.

The judgment of the Appellate Court is reversed and the case is remanded to that court with direction to dismiss the defendants' appeal.

In this opinion CALLAHAN, KATZ and PALMER, Js., concurred.

BERDON, J., concurring in part and dissenting in part. I agree that the trial court has the authority to issue a temporary mandatory injunction. See *Doe* v. *Maher,* 40 Conn. Sup. 394, 400, 515 A.2d 134 (1986) (in reciting the chronology of medicaid abortion litigation, the court refers to the entry of "a temporary mandatory injunction in favor of the [plaintiff] classes [poor women and certain physicians] ordering the defendants [state treasurer and commissioner of income maintenance] to pay, under the medicaid program, for the costs of all therapeutic abortions whether or not the life of the woman was endangered by carrying the fetus to term").

I disagree, however, with the majority's conclusion that the temporary mandatory injunction issued in this case is not appealable. The majority holds that it is not appealable because "if the defendants were finally to prevail, they could be fully compensated by way of monetary relief for any expenses incurred by them in complying with the court's order." There is nothing in the record, however, to support that statement. It is inappropriate for this court to make such a factual finding.

Based upon the facts that are before us, compliance with the temporary mandatory injunction requiring the removal of the fill would obviously interfere with the enjoyment of the land in its present state, which cannot be compensated through a monetary award. See *Northeastern Gas Transmission Co.* v. *Brush,* 138 Conn. 370, 374, 84 A.2d 681 (1951) (indicating that the granting

of immediate possession of real property to a utility pending a decision on the utility company's petition to take the property under its delegated powers of eminent domain would be appealable); *Rutkoski* v. *Zalaski,* 90 Conn. 108, 114, 96 A. 365 (1916) (interference with a person's use of his or her land constitutes irreparable injury). In this case, removal of the fill clearly would prevent the defendants from using the property in the state it was in prior to the removal.

There is a more compelling reason why the granting of this temporary mandatory injunction is an appealable order. This court recognized in *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.,* 227 Conn. 175, 198–99, 629 A.2d 1116 (1993), that "[t]he legislature has expressed a strong public policy in favor of protecting and preserving the natural resources, and particularly the wetlands, of this state. 'The inland wetlands and watercourses of the state of Connecticut are an indispensable and irreplaceable but fragile natural resource with which the citizens of the state have been endowed. The wetlands and watercourses are an interrelated web of nature essential to an adequate supply of surface and underground water; to hydrological stability and control of flooding and erosion; to the recharging and purification of groundwater; and to the existence of many forms of animal, aquatic and plant life. . . . The preservation and protection of the wetlands and watercourses from random, unnecessary, undesirable and unregulated uses, disturbance or destruction is in the public interest and is essential to the health, welfare and safety of the citizens of the state.' General Statutes § 22a-36; see *Mario* v. *Fairfield,* 217 Conn. 164, 168, 585 A.2d 87 (1991); *Cioffoletti* v. *Planning & Zoning Commission,* 209 Conn. 544, 559–60, 552 A.2d 796 (1989); see also General Statutes § 22a-1." In order to enforce this "emphatic statement of the importance of protecting

wetlands"; *Commissioner of Environmental Protection* v. *Connecticut Building Wrecking Co.,* supra, 199; the legislature gave the Superior Court the power "to restrain a continuing violation of [the Inland Wetlands and Watercourses Act], to issue orders directing that the violation be corrected or removed and to assess civil penalties . . . ." General Statutes § 22a-44 (b). The plaintiff brought this action against the defendants pursuant to the Inland Wetlands and Watercourses Act, General Statutes § 22a-36 et seq.[1]

In view of §§ 22a-36 and 22a-44 (b), if the trial court had denied the temporary mandatory injunction sought by the plaintiff, the denial would have been an appealable order. This is clear because the failure to enter such an order could result in irreparable damage to the environment. The majority concedes this point when they state that an order would be appealable whenever "the mandatory action ordered by the trial court is not subsequently reversible if the trial court is found, upon appeal from the final judgment, to have exceeded its authority."

Because a denial of the temporary mandatory injunction would have been appealable, it necessarily follows that the granting of the injunction should be appealable. *Northeastern Gas Transmission Co.* v. *Brush,* supra, a case relied upon by the majority, makes clear that appealability is a two-way street. The court reasoned that, because granting possession of another's

---

[1] I am bewildered by footnote 2 of the majority opinion. The right of appeal provided by No. 93-244 of the 1993 Public Acts is very limited. It applies only if the commissioner of environmental protection finds that an activity "will result in or is likely to result in imminent and substantial damage to the environment, or to public health" and issues a cease and desist order pursuant to General Statutes § 22a-7. Number 93-244 of the 1993 Public Acts does not provide a right to appeal from a trial court order entered pursuant to General Statutes § 22a-44 (b), the statute pursuant to which the trial court in this case issued the temporary mandatory injunction.

land to a utility company pending condemnation proceedings would be appealable, the denial of the order was necessarily appealable. Id., 374.

The majority claims that the "wisdom" of not allowing an appeal from a temporary mandatory injunction ordering abatement of an environmental hazard is "evident," because otherwise the hazard would "continue unchecked during the pendency of the appeal process." This claim ignores the fact that appealability is a two-way street—if the *issuance* of such an injunction cannot be appealed, then neither can the *denial* of such an injunction be appealed. Further, the majority conveniently overlooks our rule of appellate procedure that allows the trial judge to terminate an automatic stay of execution pending appeal. See Practice Book § 4046 ("if the judge who tried the case is of the opinion that an extension to appeal is sought or the appeal is taken only for delay or that the due administration of justice so requires that . . . judge may at any time, upon motion and hearing, order that the stay be terminated").

Accordingly, I would also reverse the Appellate Court, but I would remand the matter to that court to determine whether the trial court properly issued the temporary mandatory injunction.