[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The background of this controversy is contained in the undersigned's memorandum of decision dated September 16, 1993, which denied a motion by defendant Richard D. Williams to dismiss this action on the ground of forum non conveniens. In that decision, the court pointed out that plaintiff Senie Kerschner International Housing Limited (SKIHL), accused the defendant of tortiously interfered with SKIHL's business relationship with certain Russian entities and individuals engaged in a joint venture project. The defendant had served as construction project manager for Rosinka Joint Venture, the entity that was constructing residential rental units outside Moscow. SKIHL also alleged in its complaint that the defendant conspired with certain Russians to force one of SKIHL's own principals, Christopher Senie, to resign as the General Director of Rosinka Joint Venture, and that such conduct constituted a violation of General Statutes 42-110 et seq., the Connecticut Unfair Trade Practices Act (CUTPA).
SKIHL has moved for a temporary injunction as authorized by General Statutes 52-471 against the defendant, seeking to enjoin him from continuing to serve as construction project manager in Moscow, at least until pending arbitration occurring in Sweden between the American and Russian interests was concluded. SKIHL contends that permitting the defendant to continue in his current role will: (1) enable Williams to exercise full control over Rosinka to the exclusion of SKIHL; (2) permit defendant to continue to purchase materials and supplies from a supplier in Wallingford without approval of SKIHL; (3) permit the continued use of panel methods of construction purchased in Russia rather than the modular system produced by DeLuxe Homes in Pennsylvania, which was used when SKIHL supervised construction: (4) allow Williams to continue supervising a project for which he lacks the ability; and (5) enable defendant to continue participating in a scheme to change Rosinka Joint Venture, in which SKIHL had a 50% interest, into a stock company owned 100% by the Russian interests.
The criteria for the issuance of a temporary injunction have been set forth in a number of cases. The purpose of a temporary injunction is "to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits." Griffin Hospital v. Commission on Hospitals Health Care,196 Conn. 451, 457, 493 A.2d 229 (1985). The applicant for a temporary injunction has the burden of showing "a reasonable degree of probability of success." Id. In addition, a court CT Page 2751 must "balance the results which may be caused to one party or the other." Id. "The need to show an irreparable loss unless the status quo is preserved has also been often mentioned." Id., 458. According to Berin v. Olson, 183 Conn. 337, 340,439 A.2d 357 (1981): "[a] party seeking injunctive relief has the burden of alleging and proving irreparable harm and lack of an adequate remedy at law." (Internal quotation marks and citations omitted.) The dissent in an Appellate Court decision summarized the criteria for the issuance of a temporary injunction as follows: "[t]he plaintiff must establish that protectable interests are at stake, that it will prevail, to a reasonable certainty, subsequent to a final heating on its application for permanent injunction, and also irreparable injury and lack of an adequate remedy at law . . . . the principal purpose of such an injunction is to preserve the status quo until the rights of the parties can be finally determined after hearing on the merits . . . . In deciding whether it should be granted . . . the court is called upon to balance the results which may be caused to one party or the other, and if it appears that to deny . . . it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting . . . it, unless indeed, it is very clear that the plaintiff is without legal right . . . . The court must consider the probable outcome of the litigation, and whether an irreparable loss will result unless the status quo is preserved." (Internal quotation marks and citations omitted.) Rhode Island Hospital Trust National Bank v. Trust, 25 Conn. App. 28, 39-40, 592 A.2d 417 (1991).
Based on these standards, the court finds that the issuance of a temporary injunction is not warranted, because SKIHL has not satisfied its burden of showing probable success on the merits. I believe it more likely than not that the trier of fact will conclude that although SKIHL may well have a bona fide cause of action against certain Russian individuals for conspiring to squeeze it out of participation in Rosinka Joint Venture, Williams played a relatively minor role in the alleged conspiracy engineered by the Russians. Even if he did have a major role, for example, by reason of signing the notice terminating Christopher Senie's home telephone service, maintaining the status quo by permitting Williams to continue as construction manager appears to be in the best interests of the project because of his experience as such manager acquired since 1991.
In addition, I was not able to discern any threat of irreparably injury. Williams has been the project manager for CT Page 2752 the last three years, and was put in this position by SKIHL because of its confidence in his abilities. Hence, I think he is more experienced than most anyone else that SKIHL believes should be appointed to take over the defendant's responsibilities.
Another consideration in connection with issuing a temporary injunction is the balancing of the equities test. Keeping Williams on the job in the hope that the project continues to have the success desired by SKIHL outweighs any benefits to this plaintiff that would result from enjoining Williams from continuing his present duties. The issuance of a temporary injunction at this time would deny the defendant the opportunity to work at a job he has ben [been] performing for approximately three years.
The evidence at a full hearing on the merits may, of course, produce a different result, but employing the tests of probable success and balancing the equities at this stage of the proceedings leads the court to conclude that the issuance of a temporary injunction is contraindicated. The status quo should be maintained until a full hearing on the merits of a permanent injunction can be scheduled. "The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief. . . The status quo, for these purposes, has been defined as the last, actual, peaceable, noncontested condition which preceded the pending controversy." (Citations and internal quotation marks omitted.) Stamford v. Kovac, 228 Conn. 95, 101-02, 634 A.2d 897 (1993). Maintaining the status quo in this case means permitting Williams to continue as project manager. Moreover, it seems that SKIHL could be adequately compensated by recovering money damages, which means it has an adequate remedy at law, and a temporary injunction is not warranted at this time for that reason as well. Therefore, the request for a temporary injunction is denied.
Dated at Stamford, Connecticut, this 14th day of March, 1994.
William B. Lewis, Judge