[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiffs, four twelve-year-olds who bring suit by their fathers, Domenic Mirabelle, Marc Centinaro, Stephen Montambault, and James Corbett, seek to enjoin the defendant Prospect Little League, Inc. ("Prospect League") and its president, Clint Brandien, from refusing to furnish them with the waivers that would enable them to play on a baseball team recently formed by plaintiff Domenick Mirabelle as part of another league, the Waterbury Boys Reese League ("Waterbury League"). The four boys played in 2001 on a traveling team that the Prospect League fielded in the Waterbury League. That league, which is not a party to this lawsuit, refuses to allow a player to play on a team different from the team on which he played during the prior season unless the prior team issues a waiver releasing the child from that prohibition. The court heard evidence on May 20, 2002, and allowed the parties, who requested a very speedy decision, to provide citations to any additional cases relied upon by noon on May 21, 2002. No party did so.
The plaintiff's filed a verified complaint and an order to show cause why a temporary and permanent injunctions should not issue. The parties did not stipulate that the hearing on the application for temporary relief would also be the hearing on the merits of the claim for permanent relief, and the court therefore decides only whether the plaintiff's have proved that they are entitled to temporary relief.
Findings of Fact
Prospect Little League, Inc. is a private voluntary association, incorporated under Connecticut law. It organizes baseball teams for children of various ages who live in the town of Prospect, using the rules and standards of the national Little League organization. The Prospect League's teams for children of various age groups play among themselves. At the end of the regular season, coaches select players from the various teams to play in all-star tournaments. The Prospect League holds tryouts for a traveling teams that play against other such teams from other towns under the auspices of other leagues. The traveling team for eleven and twelve-year-olds is a team that plays against other teams CT Page 6602 in the Waterbury League. Though the various leagues cooperate to some extent regarding scheduling, the Prospect League and the Waterbury League were not demonstrated to be anything other than separate voluntary private organizations.
Minor plaintiff's Louis Mirabelle, Sean Montambault, Eric Centinaro and Steven Corbett, who are all twelve years old, were members of the Prospect League for the 2001 season and played both on regular teams for their age group and on the traveling team that played against other teams registered with the Waterbury League. The Prospect League takes a guarded approach to children's participation on multiple teams. It provides in its operating manual, which serves as its membership and operating rules, that children who play on both regular and traveling teams must put the regular teams first and play for the regular team if both teams have games at the same time, except where the absence of a player would cause the traveling team to forfeit a game. The Prospect League traveling team for eleven- and twelve-year-olds does not participate in post-season play in the Waterbury League so that the Prospect players will be available to play in the post-season all-star tournament and so that the end-of-season emphasis will be within the Prospect League itself. Clint Brandien, president of the Prospect League, testified that the latter decision has the purpose of maintaining enthusiasm for Prospect's own baseball league and inspiring a higher level of play and the possibility of sending all-star teams to the national Little League tournaments.
No official of the Waterbury League testified; however James Augelli, who was the manager of the Prospect traveling team in 2001 and manages it again this season, credibly testified that the reason that the Waterbury League requires a waiver before a player changes to a different team affiliated with that league is to discourage existing or newly-formed teams and their coaches from engaging in "raiding" or recruitment of especially talented children from other teams to play on their own teams. Apparently, the Waterbury League has the sensible aims of curbing the tendency of parents and coaches to treat children as though they were adult professional players and of focusing on lessons of loyalty to a child's home locale and playmates.
During the 2001 season, an incident occurred between one of the coaches on the Prospect traveling team and plaintiff Stephen Corbett. The Prospect League investigated, reprimanded the coach, suspended him for one game, and required him to send a written apology to the boy. Annoyed by this incident and disagreeing with the Prospect League's handling of it, Domenick Mirabelle, father of another player on that team, paid for a "franchise," that is the right to register a new team with the Waterbury League to play against the Prospect League's travel team and other teams in the Waterbury League's program. Though the complaint asserts that the CT Page 6603 four plaintiff adults coach the team, Mr. Mirabelle testified that others are now coaching the team because the four minor plaintiff's have not been able to join it. It is Mr. Mirabelle's intention to have the players on his team participate in any post-season tournaments or championship games of the Waterbury League rather than the Prospect League's all-star games if the schedules conflict.
Mr. Mirabelle and the other adult plaintiff's asked the defendant league to issue waivers to allow the four minor plaintiff's to play on Mirabelle's new team. The board of directors of the Prospect League met and declined the requests. It advised the fathers of all four minor plaintiffs of its decision in letters dated March 6, 2002. In those letters, the board of directors stated, "In making this decision, the Board has considered what is in the best interest of all participants in Prospect Little League and its travel program. We find that it is necessary to maintain the integrity of our Little League in Prospect in conjunction with our policies for our travel program."
All of the minor plaintiff's except Stephen Corbett registered to play on regular Prospect League teams for the 2002 season. Stephen Corbett plays on his middle school's baseball team. The coach of the Prospect traveling team, Mr. Augelli, testified that the four boys qualify for that team and can join it immediately, even though the season has begun, as there are available slots on the team's roster.
Nature of the relief sought
The plaintiff's do not seek a stay or an injunction that merely preserves the status quo; rather, they seek a mandatory injunction requiring the defendant Prospect Little League, Inc. to issue waivers for each of the four minor plaintiffs. "A prohibitory injunction is an order of the court restraining a party from the commission of an act. A mandatory injunction, on the other hand, is a court order commanding a party to perform an act." Tomasso Bros., Inc. v. October Twenty-Four,Inc., 230 Conn. 641, 652 (1994). The Connecticut Supreme Court has stated that a mandatory injunction compelling a party to act may be entered not to achieve the ultimate relief sought on the merits but to preserve the status quo while the merits of the claim are assessed at a full trial on the merits. Stamford v. Kovac, 228 Conn. 95, 101 (1993). "The office of a preliminary injunction is to preserve the status quo until, upon final hearing, the court may grant full relief." Id.
In order to obtain temporary prohibitory injunctive relief, a party must establish to a reasonable degree of probability that he or she will ultimately prevail on the merits of a legal cause of action and that the denial of such relief may result in greater harm to the plaintiff than CT Page 6604 will result to the defendant from granting relief Griffin Hospital v.Commission on Hospitals Health Care, 196 Conn. 451, 458 (1985). The Supreme Court has observed that the considerations germane to the granting of injunctive relief "involve essentially the application of familiar equitable principles in the context of adjusting the rights of the parties during the pendency of litigation until a final determination on the merits." Id. Though Connecticut's appellate courts have not had occasion to articulate the standard for granting a temporary mandatory injunction, the federal Court of Appeals for the Second Circuit has ruled that a party who seeks a mandatory injunction must show that he or she "clearly" is entitled to relief or that "extreme or very serious damage" will result from denial of the injunction. Phillip v. FairfieldUniversity, 118 F.3d 131, 133 (2d Cir. 1997); Tom Doherty Assocs., Inc.v. Saban Entertainment, Inc., 60 F.3d 27, 34 (2d Cir. 1995).
The plaintiff's in the case before this court do not seek to preserve the status quo. The status quo is that the plaintiff's joined the Prospect League for the 2001 season, played on its traveling team and are subject to the league's rules and reasonable exercises of discretion. The plaintiff's are now confronted by a regulation adopted not by the Prospect League, but by the Waterbury League that disqualifies them from joining a different team affiliated with the latter league. The plaintiff's do not allege that the defendants have taken any action to disturb the status quo; rather, they seek an affirmative act by the defendants to relieve the plaintiff's of the limiting effect of the Waterbury League's rule against switching teams. Indeed, given the brevity of baseball seasons and the duration of litigation, the plaintiff's seek relief that would for all practical purposes be final relief, in that they seek the remedy that under principles of equity should be theirs only if they establish that the defendants have violated some coguizable legal right.
Have the plaintiff's established a likelihood of success on a cognizablecause of action?
In oral argument after presentation of the evidence, the defendants asserted that the plaintiff's have failed to state a cause of action upon which injunctive relief can be based and that the plaintiff's are merely asking this court to intervene in the affairs of the Prospect Little League, Inc. and to substitute its opinion for the decision of that organization. The court finds that this characterization is accurate, and that the plaintiff's have lost sight of the basic proposition that parties are not entitled to injunctive relief from the courts unless some cognizable legal right has been violated or is in danger of violation by the parties they have sued. Pressed at oral argument to articulate the legal right at issue, the plaintiffs, by counsel, did little more than repeat their desire to have this court issue an order in accordance with CT Page 6605 the outcome they desire, without articulating a legal cause of action that would support entitlement to such an order.
In their verified complaint, the plaintiff's allege that the minor plaintiff's desire to play on the new team started by Mr. Mirabelle, and that all four of the fathers intend to coach this team. The minor and adult plaintiff's allege at paragraph 6 of their complaint that "Plaintiff coaches and sons wish to participate in the little league together." The only reference to an actual legal claim in the complaint, at paragraph 10, is that "[t]he plaintiff's have an interest, legal or equitable by reason of danger of loss or uncertainty as to the Plaintiffs' rights or other jural relations." Nowhere in the complaint do the plaintiff's identify the legal right claimed. In a pre-hearing brief, they state that the defendant's refusal denies them their "right to free association and the right to a hearing when those rights are denied."
The right to freedom of association is a right guaranteed by the First Amendment to the Constitution of the United States. It is not, as the plaintiff's seem to think, a catch-all source of liability against private organizations, rather it is a guarantee of freedom from interference by the government: "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press, or the right of the people peaceably to assembly, and to petition the Government for a redress of grievances." The Fourteenth Amendment makes this right applicable to the states by incorporation. The Constitution "protects from unjustified governmental interference with an individual's choice to enter into and maintain certain intimate or private relationships." Board of Directors of RotaryInternational v. Rotary Club, 481 U.S. 537, 544 (1987). The plaintiff's do not contest that neither of the defendants is a governmental entity, and the court finds that they have not established that any right to freedom of association has been abridged by the defendants, who do not exercise governmental powers.
Plaintiffs' counsel asserted in post-hearing argument that the court should enter an injunction because the defendant league had failed to hold a hearing on the plaintiffs' request to issue waivers. Courts have ruled that private, voluntary associations must hold hearings before ejecting persons from membership if the association's by-laws provide for such hearings. Sterner v. Saugatuck Harbor Yacht Club, Inc., 188 Conn. 531,536 (1982). The plaintiff's do not allege, however, that the defendants have ejected them from the Prospect Little League. The uncontroverted evidence is that three of the four plaintiff's are currently playing on regular teams and that all are welcome to join Prospect's traveling team, on which they played last year. The remaining plaintiff, Steven CT Page 6606 Corbett, has chosen to play on his school's baseball team and is not enrolled in the Prospect Little League this season, but Mr. Augelli has testified that he, too, is welcome to play on the Prospect traveling team. The Prospect League has not ejected the plaintiff's from membership, and it is the rules of the Waterbury League that prevent a change to a new team.
Because of the plaintiff's failure to articulate any other cause of action against the defendants in their complaint, the court finds it appropriate to apply to the plaintiffs' general assertion of a damage to "legal relations" the standard for review of the decisions of private voluntary associations adopted by the Supreme Court in Sterner, supra. In that case, the Supreme Court stated that private associations organized as nonstock corporations must act in accordance with their by-laws and regulations, must not act beyond the powers permitted by the nonstock corporation statutes, certificate of incorporation and by-laws, and must apply their rules of internal governance in a reasonable manner. Sternerv. Saugatuck Harbor Yacht Club, Inc., supra, 188 Conn. 534-35.
The plaintiff's conceded in oral argument that no by-law of the Prospect League entitles them to waivers, and that the league had discretion in reviewing their requests. The facts do not support a finding that it was unreasonable for the league to deny the requests. The issue is not what the plaintiff's or this court would have chosen to do, but whether the Prospect League's refusal was a reasonable exercise of its discretion. While Connecticut's appellate courts have decided no case on point, the courts of other jurisdictions hold that courts should interfere with the exercise of discretion of voluntary associations only in narrow circumstances.
"Generally, a court will not interfere with the internal affairs of voluntary associations absent mistake, fraud, collusion or arbitrariness." Finn v. Beverly Country Club, 683 N.E.2d 1191, 1193
(Ill.App. 1 Dist. 1997); Van Daele v. Vinci, 282 N.E.2d 728 (1972). "In the absence of fraud, illegality, or violation of a civil or property right, the courts will not interfere with the internal affairs of an association." U.S. Auto Club, Inc. v. Woodward, 460 N.E.2d 1255, 1260
(Ind.App. 1984). A New York appellate court has ruled that clubs may apply rules and by-laws that have a rational basis. Murphy v. New YorkAthletic Club, 671 N.Y.S.2d 475, leave to appeal denied, 680 N.Y.S.2d 905
(NY A.D. 1 Dept. 1998).
The Supreme Court of Ohio has ruled that a private organization is not subject to liability for expulsion of a member if the organization acted in accordance with its bylaws. Robb v. Chagrin Lagoons Yacht Club, Inc.,662 N.E.2d 9, 12-13 (Ohio 1996). CT Page 6607
Where a club or association has no by-law covering a particular situation, courts have applied a standard of reasonableness "and the fact that people can disagree on the application of this standard to certain cases does not render the decision based on this standard arbitrary."Butler v. USA Volleyball, 673 N.E. 1063, 1067 (Ill.App. 1 Dis. 1996), quoting Head v. Lutheran General Hospital, 516 N.E.2d 921, 928-29
(Ill.App. 1987).
In denying the plaintiffs' requests, the Prospect League had the reasonable goal, consistent with its purposes, of maintaining a viable league of organized baseball for children, fostering loyalty to its program and to playmates, and minimizing conduct that was likely to disrupt such loyalties. It had the additional goals of avoiding the prospect of defaulted games and disruption of Prospect League teams when talented players are tugged by the conflicting schedules and allegiances to teams outside that league's governance. While the plaintiff's clearly do not think much of these goals, their disparagement of the Prospect League's efforts and objectives does not render the defendant league's actions arbitrary or unreasonable, and the league's exercise of discretion does not trammel any established legal right of the plaintiffs.
In fact, it appears that the plaintiffs' quarrel is not so much with the Prospect League's pursuit of its own approach to children's baseball, but to the Waterbury League's safeguard against "raiding" of players from other teams.
The court finds that the defendant league's actions were reasonable in view of its purposes, did not violate any of the league's own by-laws, and did not constitute actions beyond those authorized by the grant of corporate authority. The plaintiff's have failed to demonstrate a likelihood of success on the merits of any cause of action fairly to be construed from the allegations of their complaint concerning the legal right asserted. The court finds that they are not entitled to an order requiring the defendants to act in a manner contrary to their announced exercise of their reasonable discretion as a voluntary organization.
Conclusion
For the foregoing reasons, the plaintiffs' application for a preliminary mandatory injunction is denied.
Beverly J. Hodgson Judge of the Superior Court CT Page 6608