THE COUNTY OF DU PAGE, Plaintiff-Appellee, v. THEODORE D. GAVRILOS *et al.*, Defendants (Picture Perfect, Inc., Defendant-Appellant).

Second District    No. 2—05—0817

Opinion filed August 26, 2005.

Douglas Drenk, of Douglas Drenk & Associates, P.C., of Addison, for appellant.

Joseph E. Birkett, State's Attorney, of Wheaton (Anthony E. Hayman, Assistant State's Attorney, of counsel), for appellee.

JUSTICE BYRNE delivered the opinion of the court:

Plaintiff, the County of Du Page, filed a four-count complaint for injunctive relief alleging that the business operations of defendant, Picture Perfect, Inc., commonly known as "One In A Million," constitutes an "Adult Business Use" as defined by the Du Page County zoning ordinance, and that the operation of an adult business use on the subject property violates several location restrictions of the Du Page County zoning ordinances. The County subsequently petitioned the trial court for a temporary restraining order (TRO). Defendant responded with a motion to strike the petition; a motion to strike the affidavit of Paul Hoss, an employee of the County's zoning division; three counteraffidavits; and an answer to the petition, filed in the alternative to the motion to strike. Following a hearing on the County's petition, the trial court issued a TRO. Defendant filed this interlocutory appeal (188 Ill. 2d R. 307(a)(1)) contesting the TRO.

Defendants Theodore D. Gavrilos, Georgia B. Gavrilos, and Theodore D. Gavrilos and Georgia B. Gavrilos, as trustees under the terms and provisions of a certain trust agreement dated March 22, 1996, and known as the Theodore D. Gavrilos and Georgia B. Gavrilos Trust, are not parties to the appeal.

## BACKGROUND

All four counts of the County's complaint allege that defendant's use of the premises constitutes an "Adult Business Use" in violation of Du Page County zoning ordinances. Count I alleges a violation of an adult business use in a B-2 zoning district. Du Page County Zoning Ordinance §§ 37—8.2—1, 37—8.2—2 (___). Counts II, III, and IV allege that defendant violates the ordinances because it uses the premises as an adult use and the premises are located within (count II) 1,000 feet from the property line of a residentially zoned parcel; (count III) 1,000 feet from the property line of a school; and (count IV) 1,000 feet from the property line of an active recreational facility, an Addison Park District golf course. Du Page County Zoning Ordinance § 37—4.16—2 (___).

Section 37—3.2 of the Du Page County Zoning Ordinance (Du Page County Zoning Ordinance § 37—3.2 (___)) defines adult business use as:

> "The use of property for the operation of a Massage Parlor and/or Bathhouse, or any use of which a significant or substantial portion involves an activity distinguished or characterized by its emphasis on matters depicting, describing or relating to Specified Sexual Activities or Specified Anatomical Areas, including but not limited to the operation of Adult Bookstores and/or Video Store, Adult Mini-Motion Picture Theater, Adult Motion Picture Theater, Adult Motion Picture Arcade, Adult Motel, Adult Card and Gift, or Novelty Store. For the purposes of this Ordinance an Adult Business Use shall not be deemed a retail business, recreational or social facility, accessory use or general use."

The County attached to the petition for TRO affidavits of three undercover Addison policemen, which set forth specific and detailed allegations in support of the County's contention that the business known as "One in A Million" operated as an adult use as defined by the zoning ordinance. The three police officers conducted undercover investigations on four random visits over a four-month period. The officers had sessions with three employees that all involved similar activities that were offered to the officers. The respective employee would offer to do a session either topless and wearing a G-string, nude, or with a "porno" dance. The prices offered for these options were similar. In each instance, the employee removed all of her cloth-

ing and either masturbated or simulated an act of masturbation, and fondled and touched her breasts and vagina in a sexual or erotic manner. In addition, the employees by their words or conduct directed or encouraged the officers to masturbate as part of the session while the officers observed the employees' performance. One employee suggested at the end of the session that there would be more explicit sexual activity available on subsequent visits after the employee came to know the officer. None of the officers saw any photographic equipment or indication that the business was engaged as a photography studio.

In addition to the officers' affidavits, the County also attached to the petition the affidavit of Paul Hoss, the zoning coordinator for the Du Page County Department of Economic Development and Planning, who performed code-related inspections and conducted zoning reviews for certain permit applications made with the County. He visited defendant's premises to conduct a code enforcement inspection on July 27, 2005. He was familiar with the investigations conducted by the Addison police department and the Du Page County sheriff's office prior to his inspection of the premises. He reviewed the public records kept and maintained by the County for the premises. Based on his review, he verified that the premises is located in a B-2 zoning district and that the property is located within 1,000 feet of residentially zoned property, within 1,000 feet of a public grade school, and within 1,000 feet of an active recreation area. Hoss personally reviewed the advertisements for "One In A Million" in the July 2005 edition of "The Gentlemen's Pages" publication, and the advertisements for "One In A Million" depicted at its website, which were attached as copy. Based on the advertisements and his inspection of the site, he opined that "One In A Million" is an adult business use as defined and regulated by the zoning ordinance and that it was not a permitted use on the property under the County's zoning ordinance provisions.

Defendant contended below as it does on appeal that its property is identified and used as a photography studio. Defendant filed a motion to strike the petition for TRO, arguing that the petition was insufficient as a matter of law and should be struck because, among other things, the affidavits do not support the conclusion that only four random incidents of sexually-explicit conduct constitute a significant portion of the business operations of defendant. Defendant argued that from the facts it cannot be inferred that a significant or substantial portion of the use of the premises is for the prohibited activity.

Defendant filed three counteraffidavits. The first, filed by Tina Fouts, the president of defendant, averred that defendant was

incorporated as a "photography/modeling studio" and has remained and is in good standing; that it expended approximately $75,000 in improving the premises for compliance with the County ordinances; and that it spent in excess of $6,000 in digital photographic equipment, all of which is situated on the premises. Fouts stated that at no time since opening for business in 2003 has she or defendant received any ordinance violation citation or any complaint from any private person or public authority regarding its operation. Fouts averred that she was on the premises when Hoss came to visit and at no time did Hoss ask her questions that she failed to answer.

Fouts admitted that defendant does business as "One In A Million" but denied that it was engaged in activities that would constitute an adult business use. Fouts further admitted that she was present when one of the undercover officers was on the premises but generally denied the officer's allegations regarding his encounter with her. Fouts averred that she advised the officer that defendant charges $90 for one-hour photographic sessions. She also averred that she did observe the officer voluntarily remove his clothes and masturbate on both dates that he was present. She also observed another undercover officer on another date get naked and masturbate.

In each of the other two counteraffidavits filed, the affiants similarly denied the allegations of the undercover officers regarding sexual activity. However, the affiants stated that each undercover officer they had verbal contact with voluntarily removed his clothes and masturbated and left the premises. Each affiant averred that she is an independent contractor who models for defendant, and each fully described all photography-related services offered by defendant to the undercover officers.

Following a hearing, the trial court found that the affidavits presented by defendant were not sufficient to negate the allegations of the County's affidavits that there is a predominantly adult use as defined in the County zoning ordinance and that this adult use is in violation of the County's ordinances. The trial court further found that the County has set forth an ascertainable right, namely, the right of the citizens of the County to have the zoning ordinances complied with by all persons and businesses. The court also found that the County established that the schools, recreational uses, and residences that are within the prohibited distance in the zoning ordinances would suffer irreparable injury if a TRO were not entered. The court further found that the County has established a likelihood of success on the merits when the matter goes to a full hearing and that there is no adequate remedy at law and that no fines could be assessed that would mitigate the irreparable injury. Accordingly, the court issued a TRO

prohibiting defendant from operating at the subject premises until the matter could be brought to a full hearing. Defendant timely brought this interlocutory appeal.

## ANALYSIS

Defendant first argues that the County's petition, standing alone, fails to set forth sufficient grounds for relief because it fails to state adequate facts to establish the zoning ordinance violations for which the TRO is sought and, therefore, it is materially insufficient as a matter of law. We disagree for the following reasons.

Defendant's argument ignores those parts of the County's petition that specifically reference the allegations of the complaint. Further, we agree with the County that the argument appears to hold the County's petition to a standard of pleading and proof somewhat akin to a trial on the merits. Even assuming, *arguendo*, that the County's petition is insufficient, the defect was remedied by the trial court's ability to take judicial notice of pleadings on file and to consider such matters as part of the proceedings.

■ In Illinois, "where a statute expressly authorizes injunctive relief to enforce the provisions of the statute, the general rules of equity requiring a showing of a lack of an adequate remedy at law and irreparable injury need not be shown." *People v. Fiorini*, 143 Ill. 2d 318, 346 (1991). Therefore, it is well established that where a governmental agency is authorized to seek injunctive relief, it is not necessary to plead or establish the traditional equitable elements necessary to obtain an injunction. *County of Kendall v. Rosenwinkel*, 353 Ill. App. 3d 529, 539 (2004). In the enforcement of any statute or ordinance, there is a presumption that the public is harmed when the statute or ordinance is violated. *Rosenwinkel*, 353 Ill. App. 3d at 539, citing *Midland Enterprises, Inc. v. City of Elmhurst*, 226 Ill. App. 3d 494, 504 (1993).

When seeking injunctive relief under the common law, the party seeking a preliminary injunction or TRO must establish facts demonstrating the traditional equitable elements that (1) it has a protected right; (2) it will suffer irreparable harm if injunctive relief is not granted; (3) its remedy at law is inadequate; and (4) there is a likelihood of success on the merits. *Houseknecht v. Zagel*, 112 Ill. App. 3d 284, 291-92 (1983). In either case, the party seeking relief is not required to make out its entire case that would entitle it to relief on the merits; rather, it need show only that it raises a " 'fair question' " about the existence of its right and that the court should preserve the status quo until the case can be decided on the merits. *Buzz Barton & Associates, Inc. v. Giannone*, 108 Ill. 2d 373, 382 (1985).

■ Further, section 11—101 of the Code of Civil Procedure (735 ILCS 5/11—101 (West 2004)) allows the trial court to grant a TRO based upon the specific facts shown in the affidavits accompanying the petition or in a verified complaint on file. The statute does not prohibit the trial court from considering both the affidavits and verified complaint if both are available, as in this case.

Here, the County pursued its right to relief under the statutory authority permitting counties to seek injunctive relief to abate violations of its zoning ordinances. See 55 ILCS 5/5—12017, 5—13004 (West 2004). Because the County is authorized by statute to enjoin violations of its zoning ordinances, the County need show only that its ordinance was violated. Notwithstanding this standard, the County's petition also asserts that the County had established sufficient facts to establish each traditional element for injunctive relief under the common law.

■ In this case, the verifications for the complaint were executed by the same persons who provided affidavits for the petition: Paul Hoss and the three Addison police officers. The affidavits essentially reiterated the allegations verified by each person in the complaint, but in greater detail. The complaint recited relevant portions of the zoning ordinance, and the actual text was attached to Hoss's affidavit as one of the materials he relied upon in giving his affidavit.

The undisputed facts established, *inter alia*, the location of defendant's business, the site's zoning classification, and the proximity of the business to certain residentially zoned parcels, a school, and a public golf course. The contested evidence involved the four inspections conducted by the undercover officers, which showed that the "One In A Million" business operated as an adult use consistently. The affidavits indicated that three different employees offered nearly identical services on four occasions to the three investigating officers. Hoss's affidavit also avers facts relating to defendant's own public admissions concerning the nature of its business operations in holding itself out to the community through Internet and magazine advertisements.

In support of its argument that the County fails to allege that defendant's business operations constituted an adult business use, defendant characterizes the officers' investigations as uncovering little more than four isolated incidents since 2003. Although the four incidents spanned a three-month period, from April to July 2005, there is no basis for inferring that had the police investigated more, they would have observed anything different. We agree with the County that what the officers attest to, and what defendant does not address, is the absence of any other conforming business use in which the subject business might be engaged.

Based on the foregoing, we conclude that the trial court did not abuse its discretion in determining that the County adequately established, for the purpose of the pending petition, that the business operations of "One In A Million" caused that establishment to fall within the zoning ordinance's definition of adult business use. Based on the applicable law, the County need not prove the merits of its claims at this stage of the process. The County presented factual evidence as required for a TRO hearing and, accordingly, the trial court did not abuse its discretion in arriving at its determination that the present circumstances warranted entry of a TRO. As such, the County's petition, standing alone, is sufficient as a matter of law, because the petition and its accompanying affidavits and supporting materials set forth sufficient grounds to establish the County's right to injunctive relief.

Defendant contends that the trial court abused its discretion when it found that its response to the County's petition failed to create a factual dispute as to the alleged zoning violations. Defendant cites *Passon v. TCR, Inc.*, 242 Ill. App. 3d 259 (1993), for the proposition that, where material allegations of an application for a TRO are controverted, the TRO must be denied and the case set for hearing. However, the trial court found that the affidavits presented were not sufficient to negate the allegations of the County's affidavits that there is a predominately adult use of the premises as defined in the County zoning ordinance and that this adult use was in violation of those ordinances. The trial court also believed that defendant's affidavits, at best, showed that, even if defendant were actually engaged in a photography studio activity, that use was still an adult use.

Although there is no Illinois case specifically addressing the trial court's ability to assess conflicting affidavits in support of injunctive motions, we see no reason why the trial court should not be in the best position to judge the credibility of the affidavits filed in support of the application for a preliminary injunction, as it is the trial court's province to resolve any conflicts. See *Whyte v. Schlage Lock Co.*, 101 Cal. App. 4th 1443, 1450, 125 Cal. Rptr. 2d 277, 283 (2002) (the trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts). While defendant's counteraffidavits may have created a question of fact that would preclude a summary judgment, that is not the relief that the County seeks here. The entry of a TRO requires only the showing of the likelihood of success on the merits, and the likelihood of success might involve the weighing of evidence, including affidavits.

Here, the trial court could have reasonably concluded that there

was a credibility issue with defendant's three affidavits. The County argued a number of grounds on which the trial court may have premised its findings. The County argued that defendant's affiants would be biased in view of the County's action to discontinue a business operation that was potentially making upwards of $500 per customer per one-hour session. Defendant's affiants must have understood that a resolution of this case in the County's favor could cause the closure of its lucrative setup or, at a minimum, significantly affect the manner in which it conducted its business. According to the affidavits, if they are to be believed, each of the undercover officers, during the course of an official investigation at a business under video surveillance and at a risk of loss of his job and personal embarrassment, immediately commenced masturbating as soon as he walked into the premises. The trial court could have reasonably concluded that the matters attested to were not readily plausible for a variety of reasons.

Additionally, the County argued that defendant's affidavits describing "One In A Million" as being a photography studio and devoid of illicit sexual activity could not be reconciled with defendant's public admissions stated at its Internet site or contained in its advertisements. Furthermore, none of the affidavits refute the allegations contained in the complaint or the officers' allegations that each of the employees appeared in a state of nudity before each of the detectives.

It is axiomatic that the party challenging the trial court's order has the burden of showing an abuse of discretion. The trial court has broad discretionary powers to grant or deny a request for an injunction. *Cannon v. Whitman Corp.*, 212 Ill. App. 3d 79, 81-82 (1991). In this case, defendant has not shown that the trial court abused its discretion in failing to give equal weight to defendant's affidavits. Accordingly, we reject defendant's argument.

Defendant last contends that the trial court abused its discretion when it ordered it to cease and desist all business operations, including the use of the photographic studio, at the subject property. Thus, defendant asserts that the TRO exceeds the scope of the relief sought in the County's complaint. We disagree.

Defendant cannot complain that the County asked for something less than what the trial court ordered. Paragraph 36 of the County's complaint alleges that no aspect of defendant's use of the subject property is authorized as a permitted or conditional use of the B-2 zoning district. Paragraph D of each prayer in each count of the County's complaint seeks an order restraining all business activity on the subject property until such time as defendant can demonstrate its compliance with the zoning ordinance and all applicable licenses, permits, and approvals.

Further, defendant cannot complain that the trial court erred in restoring the status quo by failing to permit it to continue to operate as a photography studio. "The status quo is defined as 'the last actual, peaceable, uncontested status which [preceded] the pending controversy.' " *Steel City Bank v. Village of Orland Hills*, 224 Ill. App. 3d 412, 417 (1991), quoting *Martin v. Eggert*, 174 Ill. App. 3d 71, 77 (1988). Between a zoning jurisdiction and a property owner or tenant, the last peaceable state of existence between those parties is a state without a zoning violation. Few Illinois cases squarely address what condition constitutes the status quo in a zoning dispute for the purpose of a TRO. See, *e.g.*, *Kolstad v. Rankin*, 179 Ill. App. 3d 1022 (1989) (appellate court need not consider denial of property owners' request for TRO to restrain gun range to abate zoning violations since ample other grounds for granting TRO were present); *Hartlett v. Dahm*, 94 Ill. App. 3d 1 (1981) (private property owners' suit to enforce ordinance could compel neighbor to cease zoning violations by way of a permanent injunction, although injunction entered was invalid in form).

Other state courts have considered the issue of what constitutes the status quo in a zoning dispute for the purpose of a TRO. For example, in *San Miguel v. City of Windcrest*, 40 S.W.3d 104, 107 (Tex. App. 2000), the city sought a TRO to prevent home owners from operating a group home at their residence, which would require the home owners to remove two of four elderly persons living at their home. The appellate court noted: "In making their assertion that the granting of the temporary injunction destroys the status quo, it appears the [home owners] understand the status quo to be the situation at the time the order was sought. Where the acts sought to be enjoined, however, violate an expressed law, 'the status quo to be preserved could never be a condition of affairs where the respondent would be permitted to continue the acts constituting that violation.' " *San Miguel*, 40 S.W.3d at 109, quoting *Houston Compressed Steel Corp. v. State*, 456 S.W.2d 768, 773 (Tex. Civ. App. 1970); see also *City of Stamford v. Kovac*, 228 Conn. 95, 102, 634 A.2d 897, 900 (1993), citing *Burton v. Celentano*, 134 Ariz. 594, 658 P.2d 247 (1982) (property owners who diverted the natural flow of a waterway could be compelled to undertake restorative acts under a TRO).

The function of a preliminary injunction is not merely to contain ongoing damage but to prevent prospective damage. The County's complaint and petition each set forth grounds upon which the trial court could reasonably conclude that ordering "One In A Million" to close was the only means of ensuring compliance with the zoning ordinance. As noted by the trial court, even operating as a photography

studio, the business could, and perhaps was likely to, continue to function as an adult business use. We do not find that the trial court abused its discretion by failing to permit defendant to continue to operate as a photography studio. Accordingly, we do not find that the TRO is broader in scope than the relief sought.

We have reviewed defendant's remaining contentions and find them to be without merit.

For the preceding reasons, we affirm the decision of the circuit court of Du Page County.

Affirmed.

BOWMAN and CALLUM, JJ., concur.